Olivia Karpinski & Paul
Edalat

   v.
                            Case No. 18-cv-1214-PB
                            Opinion No. 2019 DNH 110

Union Leader Corporation,
Patricia J. Grossmith, &
Trent E. Spiner

### O R D E R

Olivia Karpinski and Paul Edalat allege that they were defamed in an article published by the New Hampshire Union Leader. They have sued the paper's owner, its executive editor, and the article's author for defamation, false light invasion of privacy, conspiracy, and violation of the New Hampshire Consumer Protection Act. The defendants have responded with a motion to dismiss contending that: (1) the statements that gave rise to the defamation and false light claims are protected by the fair report privilege; (2) the complaint cannot support a conspiracy claim because it does not sufficiently allege that the defendants entered into an unlawful agreement; and (3) the Consumer Protection Act claim fails because the article in question is not deceptive. After carefully considering the parties' respective arguments, I agree that the complaint must be dismissed.

# I. BACKGROUND[1]

Olivia Karpinski is a graduate of the University of New Hampshire and a runner-up in the Miss New Hampshire USA pageant. In early 2015 she moved to California and began working as Director of Sales for PharmaPak, Inc. ("PharmaPak"), a medical products company founded by Bruce Cahill. See Complaint, Doc. No. 1 ¶¶ 12-14. During her time at PharmaPak, Karpinski met Paul Edalat, a major shareholder of the firm. Id. ¶ 21. Things soon went south. In April 2016, Cahill filed a federal lawsuit against numerous defendants, including Edalat and Karpinski, alleging RICO violations, securities violations, fraud and deceit, and fraud by concealment. See id. ¶ 20; Complaint, Cahill et al. v. Edalat et al., No. 8:16-cv-00686-AG-DFM (C.D. Cal. Apr. 12, 2016), Doc. No. 1 [hereinafter "Cahill docket"].

Karpinski responded with counterclaims of her own.[2] In pleading her claims, she details an incident in November 2015, when

---

[1] The facts recounted are drawn from plaintiffs' complaint, public records, documents central to the disputed claims and "documents sufficiently referred to in the complaint." See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)) (internal quotation marks omitted).

[2] Karpinski's counterclaims included sex discrimination, "sexual harassment-hostile work environment," retaliation for reporting sexual harassment, fraud, and negligent misrepresentation.

> Cahill grabbed Karpinski's arm, and pulled her bodily
> towards himself in an attempt to kiss Karpinski. She
> deflected the kiss by turning her face away, and pulling
> her body away from Cahill.

Cahill docket, Karpinski Counter-Claim and Cross-Complaint, Doc.

No. 30 at 5. That incident is cited to support two of her

causes of action: first, that Cahill breached the covenant of

good faith and fair dealing by "sexually harass[ing] Karpinski

and create[ing] a hostile work environment;" and second, that

Cahill wrongfully terminated her by firing her "in the hopes of

silencing here [sic] and to hide the fact of his sexual assault

on her." See id. at 36. Karpinski also brought claims against

Cahill for common law assault and common law battery that are

based in part on the unwanted kiss. See id. at 37.

Karpinski accompanied her counterclaims with public

relations articles and social media activity. She issued an

online press release titled "UCI Trustee Allegedly Wrongfully

Terminates Former Employees" that stated "Former Vice President

of Sales Olivia Karpinski also alleges sexual harassment and

sexual assault by Cahill." See Cahill docket, Doc. No. 95-8;

Doc. No. 94-1 at 13. And she instagrammed a statement

advocating for dignified workplace treatment of women, asserting

that she "was in a constantly stressful and hostile environment

and was sexually assaulted after being given a promotion" by

Bruce Cahill. See Cahill docket, Doc. No. 95-6. Edalat linked

to Karpinski's posts on social media, writing, "Bruce Cahill and his fraud of a gang will face justice soon!"  See Cahill docket, Doc. No. 95-15.  Not to be outdone, Cahill fired back with an amended complaint, adding libel claims against Edalat and Karpinski for wrongfully accusing him, inter alia, of sexual assault, sexual harassment, and wrongful termination.  See Cahill docket, Cahill Second Amended Complaint, Doc. No. 142 at 71-77.

Cahill later deposed Karpinski in an apparent attempt to undermine her claim that he had sexually assaulted her. Referring to the parts of the body that California's civil sexual assault statute[3] defines as "intimate parts," see Cal. Civ. Code § 1708.5(d), his counsel asked Karpinski:

> Q. Did he ever at any time touch you in or around your
> breast area to try to make sexual contact with you?
> A. More my shoulder.
> Q. Breast? "Yes" or "no."
> A. No.
> Q. How about the genital areas?
> A. No.
> Q. How about the buttock areas?
> A. No.

Cahill docket, Doc. No. 95-7 at 2.  She also described the story of the unwanted kiss from Cahill, testifying that "He did kiss me.  It landed on my face, just not on my lips."  Cahill docket,

---

[3] The statute is captioned "Sexual battery; damages; equitable relief."  I refer to the statute in this Memorandum and Order as the California civil sexual assault statute.

Doc. No. 95-7 at 5. Cahill's counsel later relied on this exchange in contending in a pleading that "[b]y far the most damaging accusation, that Mr. Cahill sexually assaulted Karpinski, was actually admitted by her to be false just days ago when Karpinski's deposition was taken on October 14, 2016." See Cahill docket, Doc. No. 94-1 at 12-13.

Denterlein Worldwide, a public relations company, subsequently reached out to the Union Leader about publishing an article on the case. See Complaint, Doc. No. 1 ¶ 24. The Denterlein agent framed the case as "a story out of California with a strong local connection in New Hampshire." See Doc. No. 1-1 at 3. The agent's email included "background" on the case and claimed that Edalat and Karpinski "publicly accused Cahill of alleged crimes and misdeeds . . . includ[ing] a false claim of sexual harassment that Karpinski later admitted, under oath, was baseless." Doc. No. 1-1 at 4. The next day, the agent emailed excerpts of Karpinski's deposition in the California case and contact information for various litigation counsel to Patricia Grossmith, a Union Leader reporter. See Complaint, Doc. No. 1 ¶ 29.

Four days after the initial contact from Denterlein, the Union Leader published its article. The front page of the June 4, 2017 New Hampshire Union Leader Sunday Edition boasted the headline "California Fraud Suit Names NH Pageant Finalist." See

5

Complaint, Doc. No. 1 ¶ 13; Union Leader Article, Doc. No. 1-2.

Under a large headshot of Karpinski, the article begins

> A former beauty queen from Auburn is among those being sued
> in California in a fraud case involving allegations that at
> least $2.3 million of investors' money in a pharmaceutical
> company was used on junkets to Las Vegas and other lavish
> items.

Doc. No. 1-2 at 2. It covers Cahill's allegations that Edalat

defrauded the company while living luxuriously and that

Karpinski and Edalat falsely reported that Cahill was

distributing illegal drugs. Id. The author does not expressly

cite Karpinski's counterclaims but instead states that "Edalat

has accused Cahill of sexually harassing Karpinski, but under

oath she later admitted the allegations were baseless, according

to court records." Id. at 3.

The Cahill case was tried later that summer. In November

2017, judgment was entered in favor of Cahill against Edalat for

$700,000; in favor of Cahill against Karpinski for $11,000; in

favor of Edalat against Cahill for $250,000, and in favor of

Karpinski against Cahill for $10,000. See Cahill docket, Doc.

No. 367. Because the jury returned general verdicts, it is

unclear which claim or claims it deemed meritorious. See

Verdict Form, Cahill docket, Doc. No. 324.

## II. STANDARD OF REVIEW

In considering a motion to dismiss under Federal Rule of

Civil Procedure Rule 12(b)(6), I "accept as true the well-

pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., 284 F.3d 1, 6 (1st Cir. 2002). The plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In ruling on a motion to dismiss, the court accepts all plausibly pleaded facts to be true and can consider "matters of public record[ ] and other matters susceptible to judicial notice." Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014). Such documents include records "the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiffs' claim; [and] . . . documents sufficiently referred to in the complaint." Freeman, 714 F.3d at 36 (quoting

Watterson, 987 F.2d at 3 (1st Cir. 1993)) (internal quotation marks omitted).

In an appropriate case, an affirmative defense may be adjudicated on a motion to dismiss.  See, e.g., Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001).  Such adjudication is appropriate only if "the facts that establish the defense [are] definitively ascertainable" from the complaint and matters of judicial notice and those facts "conclusively establish the affirmative defense."  In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003).

### III.  ANALYSIS

Karpinski and Edalat base their claims on four allegedly false and defamatory statements made in the Union Leader article:

**Statement 1:**

> A former beauty queen from Auburn is among those being sued in California in a fraud case involving allegations that at least $2.3 million of investors' money in a pharmaceutical company was used on junkets to Las Vegas and other lavish items.

Complaint, Doc. No. 1 ¶¶ 40, 41.

**Statement 2:**

> [W]hile [Karpinski] was working for PharmaPak, she traveled to Las Vegas and, along with Edalat, wined and dined potential investors for Sentar Pharmaceuticals, another company formed by Edalat.  PharmaPak was billed for the expenses, according to Cahill.

Complaint, Doc. No. 1 ¶¶ 40, 41.

**Statement 3:**

> Edalat and Karpinski also allegedly planted THC and
> marijuana in the office of the PharmaPak's chief scientist
> and then telephoned Irvine police to falsely report that
> the scientist and Cahill were manufacturing and
> distributing illegal drugs, court records state.

Complaint, Doc. No. 1 ¶¶ 38, 39.

**Statement 4:**

> Edalat has accused Cahill of sexually harassing Karpinski,
> but under oath she later admitted the allegations were
> baseless, according to court records.

Complaint ¶¶ 35, 36.

I begin by determining whether any of these statements can
support claims for defamation or false light invasion of
privacy. I then turn to defendants' challenges to plaintiffs'
conspiracy and Consumer Protection Act claims.[4]

**A. Defamation and False Light Invasion of Privacy Claims**

Defendants argue that all four of the statements that serve
as the basis for plaintiffs' defamation and false light claims
are protected by the fair report privilege because they fairly

---

[4] Plaintiffs also assert a separate cause of action for
respondeat superior that seeks to hold the Union Leader
vicariously liable for the torts of its employees. Because, as
I explain below, the Union Leader is protected by the fair
report privilege, it cannot be held liable on a respondeat
superior theory even if respondeat superior can be pleaded as a
separate cause of action.

summarize statements made in court filings in the Cahill litigation.

The fair report privilege is a conditional privilege that protects the "publication of defamatory matter concerning another in a report of an official action or proceeding . . . if the report is accurate and complete or a fair abridgement of the occurrence reported." Hayes v. Newspapers of N. H., Inc., 141 N.H. 464, 466 (1996) (quoting Restatement (Second) of Torts § 611 (1977)). Because of the public interest in access to official proceedings, "the privilege exists even though the publisher himself does not believe the defamatory words he reports to be true and even when he knows them to be false." Restatement (Second) of Torts § 611 cmt. a (1977). A defendant who asserts the privilege bears the burden of "establishing its applicability, and the determination of whether the defendant has carried this burden is for the trial court." Thomas v. Telegraph Publishing Co., 155 N.H. 314, 327 (2007).

A report need not be verbatim to be protected by the privilege; it is enough if it gives "a rough-and-ready summary that is substantially correct." Hayes, 141 N.H. at 466 (citation omitted). In other words, a "statement is considered a fair report if its 'gist' or 'sting' is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced." Thomas, 155 N.H. at 327

(quoting Yohe v. Nugent, 321 F.3d 35, 43 (1st Cir. 2003)

(applying Massachusetts law)). The report must be not only

accurate; it must also be fair. Id.; Restatement (Second) of

Torts § 611 cmt. f (1977) ("Even a report that is accurate so

far as it goes may be so edited and deleted as to misrepresent

the proceeding and thus be misleading.").[5]

Karpinski and Edalat argue that the fair report privilege

does not apply here for several reasons. None of their

arguments persuade.

### 1. Fair and Accurate Report

Plaintiffs first argue that the fair report privilege does

not apply because the four challenged statements do not fairly

summarize statements made during the Cahill litigation. This

argument is clearly incorrect with respect to three of the four

statements. The fourth statement requires closer analysis.

---

[5] Although the New Hampshire Supreme Court has not determined
whether the fair report privilege applies to false light
invasion of privacy claims, I am confident that the court would
apply the privilege to such claims. New Hampshire has largely
adopted the Restatement (Second) for its law of defamation.
See, e.g., Thomas, 155 N.H. at 327. The Restatement extends the
fair report privilege to false light claims. See Restatement
(Second) of Torts § 652G (1977) ("The rules . . . on the special
privileges stated in §§ 611 and 612[] apply to the publication
of any matter that is an invasion of privacy."). And the same
rationale that underlies the use of the privilege for
defamation, namely that a well-informed citizenry requires the
reporting of fair and accurate news, applies to false light
invasion of privacy. See Hayes, 141 N.H. at 1238.

**Defamatory Statement 1:**

A former beauty queen from Auburn is among those being sued
in California in a fraud case involving allegations that at
least $2.3 million of investors' money in a pharmaceutical
company was used on junkets to Las Vegas and other lavish
items.

**Defamatory Statement 2:**

[W]hile [Karpinski] was working for PharmaPak, she traveled
to Las Vegas and, along with Edalat, wined and dined
potential investors for Sentar Pharmaceuticals, another
company formed by Edalat. PharmaPak was billed for the
expenses, according to Cahill.

There is no dispute that the first statement correctly
reports that Karpinski was "among those being sued in California
in a fraud case." Plaintiffs nevertheless offer other quibbles.
First, they argue that the second statement is not protected by
the privilege because Karpinski and Edalat "never jointly 'wined
and dined' investors." But there is no material difference when
considering defamation and false light invasion of privacy
claims between defrauding a company alone or in tandem.

Karpinski and Edalat next argue that neither statement is
protected because they never improperly diverted funds from
Pharma Pak. This argument is based on an apparent
misunderstanding of the privilege. The privilege does not turn
on whether the underlying allegations are true. What matters is
whether the article fairly reported on allegations made in the
Cahill litigation. It did. See Cahill Docket, Second Amended
Complaint, Doc. No. 142 ¶ 83 ("Edalat and Karpinski promoted

Global Holdings . . . by traveling to Las Vegas, Nevada and
Beverly Hills on frequent occasions and, using Pharma Pak funds,
lavishly entertained prospective customers and investors for
Global Holdings . . . .").  Because statements 1 and 2 fairly
describe allegations made in the Cahill litigation, the fair
report privilege shields the defendants from liability for those
statements.

**Defamatory Statement 3:**

> Edalat and Karpinski also allegedly planted THC and
> marijuana in the office of the PharmaPak's chief scientist
> and then telephoned Irvine police to falsely report that
> the scientist and Cahill were manufacturing and
> distributing illegal drugs, court records state.

Karpinski and Edalat attack the third statement by arguing
that they did not plant illegal substances on Pharma Pak
property or file a false police report.  Once again, however,
the question is whether Cahill alleged so in a pleading and
whether the Union Leader accurately reported that allegation.
The answer to both questions is yes.  In his second amended
complaint, Cahill alleged that

> Edalat and Karpinski . . . planted, in or around February
> 15, 2016, THC and marijuana, both illegal controlled
> substances, in the offices of the chief scientist of Pharma
> Pak and then called the local Irvine Police Department in
> order to cause his arrest . . . .

Cahill docket, Second Amended Complaint, Doc. No. 142 ¶ 100.

The Union Leader provided a "rough-and-ready" summary of the

complaint's allegation and thus the third statement is also protected by the fair report privilege.

**Defamatory Statement 4:**

> Edalat has accused Cahill of sexually harassing Karpinski, but under oath she later admitted the allegations were baseless, according to court records.

The fourth challenged statement presents a somewhat more complex problem.  This is because although Cahill filed a pleading alleging that Karpinski had admitted under oath that her sexual <u>assault</u> charge was false, <u>see</u> <u>Cahill</u> docket, Doc. No. 94-1 at 12-13, he never claimed that Karpinski had conceded that her sexual <u>harassment</u> claim was meritless.  Thus, the Union Leader does not correctly describe the state of the pleadings on this narrow point because it fails to distinguish between a civil sexual assault claim and a sexual harassment claim.

I am not persuaded that this minor misreading of an exceedingly complex docket is sufficient to deprive the defendants of the fair report privilege.  To an attorney, the difference between a violation of the California civil sexual assault statute and a state or federal claim of sexual harassment may seem obvious.  But to an ordinary citizen of "common and reasonable understanding," those terms have a less definite, and more overlain, meaning.  <u>Cf.</u> <u>Ben Hamida v. Gonzales</u>, <u>478 F.3d 734, 739 n.7 (6th Cir. 2007)</u> (rejecting claim that witness was inconsistent by first alleging sexual abuse and

later testifying he was merely harassed because "he may have simply been confused by the difference between 'sexual abuse' and 'sexual harassment,' just as he was confused by the difference between 'sexual assault' and 'sexual harassment' with respect to police officers' conduct toward his mother"); see also Gavin Keene, Preserving VAWA's "Nonreport" Option, 93 Wash. L. Rev. 1089, 1093 & n.26 (2018) ("Public discourse, influenced by popular culture movements and media coverage, frequently conflates distinct forms of sexual misconduct.") (collecting sources). And it is the common understanding, not the attorney's, that controls this inquiry.

Indeed, Karpinski's own public statements about the litigation appear to confuse sexual assault and sexual harassment. On Instagram, she announced that she "was sexually assaulted [by Cahill] after being given a promotion." Cahill docket, Doc. No. 95-6. Her press release says that "Former Vice President of Sales Olivia Karpinski also alleges sexual harassment and sexual assault by Cahill." Cahill docket, Doc. No. 95-8. The mistake is understandable: her allegation of unwanted contact satisfies the elements of common law assault and an unwanted kiss is fairly perceived as a sexual act. To treat sexual harassment and sexual assault as synonyms is to err, but it does not deprive defendants of the fair report privilege.

The Cahill docket contained hundreds of filings, including court orders, depositions, and memoranda of law. It is a complicated docket, and the Union Leader could have better expressed the claims and counterclaims in the case. But a "report need not track or duplicate official statements to qualify for the [fair report] privilege; rather, it need give only a 'rough-and-ready' summary that is substantially correct." Thomas, 155 N.H. at 327 (citing Hayes, 141 N.H. at 466). The report has done that here.[6]

## 2. Judicial Action

Karpinski and Edalat next contend that the fair report privilege does not apply because the privilege's "judicial action" requirement excludes preliminary court filings. Assuming arguendo that the privilege does not apply to the publication "of the contents of preliminary pleadings such as a complaint or petition, before any judicial action has been

---

[6] The fair report privilege also shields defendants from liability to Edalat for the fourth statement. Although Edalat claims that the statement is actionable as to him because it "makes him appear to be trivializing sexual harassment as a mere litigation tactic," the litigation record in the Cahill case plainly includes multiple allegations that Edalat claimed that Cahill had sexually harassed Karpinski. See, e.g., Cahill docket, Doc. No. 95-15 (collecting Facebook posts). Because the fourth statement fairly summarizes allegations made in the Cahill litigation about Edalat, his claims are barred by the fair report privilege.

taken," Restatement (Second) of Torts § 611 cmt. e. (1977),[7]

plaintiffs' argument fails because there was official action in

this case.  The Second Amended Complaint was filed on December

16, 2016 and the article was published on June 4, 2017.  In the

interim, the court issued a surfeit of orders including a merits

decision on the very complaint in question, see Cahill, 2017 WL

2608857 (C.D. Cal. Feb. 15, 2017) (granting in part and denying

in part motion of Karpinski, Edalat, and other defendants to

dismiss Cahill's second amended complaint).

The judicial action requirement exists to protect against a

scheme in which a tortfeasor files a complaint to "establish[] a

privilege to publicize its content and then drop[] the action."

Restatement (Second) of Torts § 611 cmt. e (1977); cf. Cowley v.

Pulsifer, 137 Mass. 392, 393 (1884) (Holmes, J.) (denying

privilege where newspaper published report of complaint before

it was docketed).  No such scheme is present here.  In any

_____

[7] Courts in other jurisdictions have discarded the judicial
action requirement.  See, e.g., Salzano v. N. Jersey Media Grp.
Inc., 201 N.J. 500, 506 (2010) ("We hold that the principles
that inform the fair-report privilege brook no exception for
initial pleadings, which fall squarely within the protective
sweep of the privilege."); Solaia Tech., LLC v. Specialty Pub.
Co., 221 Ill. 2d 558, 589 (2006) ("In 1980, Illinois joined a
growing trend, declining to place a judicial-action limitation
on the privilege.").  I need not determine whether New Hampshire
would follow this trend because defendants are entitled to the
privilege even if judicial action is required before it may be
claimed.

event, the court in the Cahill litigation exercised sufficient oversight of the litigation to satisfy the judicial action requirement.

### 3. Malice

Karpinski and Edalat also argue that defendants forfeited the privilege because they acted with malice. Under New Hampshire law, "actual malice cannot defeat the fair report privilege, but common law malice can." Thomas, 155 N.H. at 329. Actual malice is "subjective awareness of the falsity or probable falsity of a statement," while common law malice "is ill will or intent to harm." Id. at 328.

Plaintiffs point to three paragraphs in their complaint that purportedly allege common law malice. The first paragraph asserts that defendants "acted maliciously and were well aware that they published the foregoing false and/or misleading statements of fact, and did so in the larger context of a one-sided article aiming to (or substantially certain to) malign the reputations" of the plaintiffs. Doc. No. 1 ¶ 44. This allegation does not sufficiently distinguish between actual malice and common law malice. It also fails to allege facts that would support a conclusion that defendants acted with the "ill will or intent to harm" that defines common law malice. See Thomas, 155 N.H. at 328. The other two allegations similarly allege at most that defendants may have known the

18

article was inaccurate.  See Doc. No. 1 ¶¶ 60, 61.  Their
allegation of malice is therefore unable to pierce the
defendants' privilege.

### 4.  Reliance on Court Records

Plaintiffs suggested an alternative theory at the hearing
on the motion to dismiss.  They posit that a person cannot claim
the fair report privilege if the report of a public proceeding
is based on information obtained from a third party such as
Denterlein.  This contention finds no support in case law and is
at odds with the rationale underlying the privilege.

Plaintiffs primarily rely on Bufalino v. Associated Press,
692 F.2d 266 (2d Cir. 1982), in which the Second Circuit held
that a news organization was not entitled to the privilege
because the record was devoid of evidence that it "relied upon
the official records which it [claimed] it accurately summarized
in its stories."  See id. at 270.  In Bufalino, the Associated
Press published a defamatory article without relying on the
record of an official proceeding.  Only after litigation began
did reporters search through various public records to dig up
statements corresponding to the story.  The Second Circuit
rejected the district court's theory that the privilege applied
"even if the reports were not relied upon and the accuracy of
the summary is mere coincidence."  See id.

Here, by contrast, the article purports to be a report on the Cahill case and it is unquestionably based on court filings in the court docket. Except for the sexual harassment-sexual assault discrepancy, the article also closely tracks allegations made in the litigation. Plaintiffs do not allege that the Union Leader engaged in a post hoc fishing expedition for documents that correspond to allegations made in the article. Thus, Bufalino is plainly distinguishable.

Thomas, on which plaintiffs also rely, is likewise inapposite. In Thomas, the defendant was able to identify official records for some statements, but not for others. The court found the privilege inapplicable to the statements that came from "private conservations between [the reporter] and the officers" rather than from official police reports. See Thomas, 155 N.H. at 332. In our case, in contrast, there are no statements that cannot be traced to pleadings in the Cahill docket.

More importantly, plaintiffs' argument cannot be reconciled with the purpose that the fair report privilege was intended to serve. The privilege exists to further the public's interest in knowing what government is doing. A reporter should not be exposed to liability for providing a fair and accurate account of a public proceeding simply because the account was drawn in

part from information about the proceeding that was obtained from a third party.

In summary, plaintiffs' defamation and false light invasion of privacy claims must be dismissed because the statements on which the claims are based are protected by the fair report privilege.

**B.  Conspiracy Claim**

New Hampshire recognizes a cause of action for civil conspiracy, which is "a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987) (quoting 15A C.J.S. Conspiracy § 1(1), at 596 (1967)). Plaintiffs allege that defendants engaged in a conspiracy to commit defamation and false light invasion of privacy.  Because, however, plaintiffs do not have a viable claim under either theory against any of the defendants, their conspiracy claim necessarily fails.

**C.  Consumer Protection Claim**

The New Hampshire Consumer Protection Act ("CPA") makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat. Ann. § 358-A:2; Fat Bullies Farm, LLC v. Devenport, 170 N.H. 17, 24

(2017).  The statute exempts "[p]ublishers, broadcasters, printers, or other persons engaged in the dissemination of information or reproduction of printed or pictorial matter who publish, broadcast, or reproduce material without knowledge of its deceptive character." N.H. Rev. Stat. Ann. § 358-A:3, IV. The Union Leader published an article that was a fair account of allegations made in the Cahill litigation.  The complaint thus does not sufficiently allege an unfair or deceptive act.  Even if it did, there would still be no plausible allegation that the Union Leader had "knowledge" of that deception.  Accordingly, plaintiffs' CPA claim also fails to state a viable claim for relief.

## IV.  CONCLUSION

Defendants' motion to dismiss (Doc. No. 7) is granted.

**SO ORDERED.**

/s/ Paul Barbadoro_____
Paul Barbadoro
United States District Judge

July 16, 2019

cc:  Matthew R. Johnson, Esq.
     Gregory V. Sullivan, Esq.