*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO JANUARY 2, 2020

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                  \*

OLIVIA KARPINSKI, PAUL EDALAT,   \*

           Plaintiffs,     \*

                     \*  1:18-cv-1214-PB

          v.         \*  April 23, 2019

                     \*  2:12 p.m.

UNION LEADER CORPORATION,     \*

PATRICIA J. GROSSMITH, TRENT E.  \*

SPINER,                  \*

           Defendants.     \*

                     \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE PAUL J. BARBADORO


Appearances:


For the Plaintiff:        Joshua M. Wyatt, Esq.
                        City of Dover

                        Matthew R. Johnson, Esq.
                        Devine Millimet & Branch PA


For the Defendant:        Gregory V. Sullivan, Esq.
                        Malloy & Sullivan Lawyers PC


Court Reporter:           Liza W. Dubois, RMR, CRR
                        Official Court Reporter
                        U.S. District Court
                        55 Pleasant Street
                        Concord, New Hampshire 03301
                        (603) 225-1442

```
 1                  P R O C E E D I N G S

 2             THE CLERK:  This court is in session and has

 3   for consideration a motion hearing in civil matter

 4   18-cv-1214-PB, Karpinski, et al vs. Union Leader

 5   Corporation, et al.

 6             THE COURT:  Okay.  Let's start with the

 7   defendants' motion to dismiss and, in particular, if the

 8   defendant would focus on the fair report privilege and

 9   how it affects the plaintiffs' claims for defamation and

10   false light.

11             So why don't you start with that.  Okay?

12             MR. SULLIVAN:  Thank you.  Good afternoon,

13   your Honor.  Gregory Sullivan representing Union Leader

14   Corporation, Patricia Grossmith, and Trent Spiner.

15             Your Honor, it's the position of my clients

16   that the complained-of article was a fair and accurate

17   report of judicial proceedings, well-publicized judicial

18   proceedings, then pending in the state of California.

19             My client was admittedly contacted by a public

20   relations firm headquartered, I believe, in Boston and

21   as a result, perused the information that was provided

22   to my client.  And I'd point out that one of those

23   materials that were provided to my client was the

24   deposition transcript of the plaintiff Olivia Karpinski.

25             Upon reading that deposition, the author of
```

1   the article, Grossmith, formed the opinion that Olivia

2   Karpinski had, indeed, according to that court record,

3   admitted that the allegations were baseless.

4          And much has been said in the pleadings before

5   the Court about the applicability or the inapplicability

6   or the privilege and the adoption of Restatement of

7   Torts (Second) --

8          THE COURT:  I think that they have -- their

9   arguments can be grouped into three categories.  The

10  first category is that the -- that the requirement that

11  there be judicial action has not been satisfied here;

12  the second argument is that they sufficiently allege

13  malice to prevent the privilege from applying or to

14  prevent dismissal of the complaint on that basis; and

15  the third is that construing their complaint and the

16  materials in the light most favorable to them, the --

17  they have identified four statements that are not a fair

18  and accurate report that's required for the fair report

19  privilege to apply.

20         Do you -- let me ask plaintiffs.  Do you agree

21  that your arguments with respect to fair report

22  privilege can be fit into those three broad categories?

23         MR. WYATT:  Well, your Honor, I would maybe

24  add another category, maybe perhaps more.  Let me think

25  about this.

1          On this record, there's no evidence that there

2    was any reliance on the filings in the Cahill action.

3    So before you even ask the question of was there

4    judicial action, in our view, the -- there's nothing on

5    this record that supports the proposition that that was

6    relied upon for the reporting.

7          THE COURT:  All right.  I -- I don't find any

8    requirement in the case law that in order to claim the

9    privilege they have to prove that they read the

10   pleadings and relied on them.  They could have heard

11   about the pleadings from a second- or thirdhand source.

12   If they report what the pleadings contained fairly and

13   accurately, I'm not aware of any exception to the fair

14   report privilege.

15         What case do you rely on for that kind of

16   fourth exception?

17         MR. WYATT:  Your Honor, there is the *Jankovic*

18   case cited in our objection and then there's two cases

19   cited in --

20         THE COURT:  Do you have copies of those cases?

21         MR. WYATT:  I do, your Honor.

22         THE COURT:  All right.  Pull them out and give

23   them to my clerk.  She's going to come over and get them

24   from you and then I'm going to read them because I

25   didn't see that support for that proposition in your

1    materials.

2              MR. WYATT:  Bear with me, your Honor.

3              THE COURT:  If you can't find them, just give

4    me the cite.  I'll have my law clerk go up and print

5    them out for me.

6              MR. WYATT:  I have two of them, your Honor.

7    Bear with me.  I'm --

8              THE COURT:  Hand up the two that you have.

9    I'll read those while you're looking for the third.

10             MR. WYATT:  What I'm handing you -- I believe

11   I just found it.

12             THE COURT:  Okay.  So I'm reading *Suulutaaq*

13   and *Williams* -- *Suulutaaq v. Williams* and *Jankovic vs.*

14   *International Crisis Group*, which the defendant --

15   excuse me -- the plaintiff says -- and also *Bufalino*,

16   which are cases that the plaintiff says are cited in

17   their materials.

18             So I'm just going to read those over.

19             MR. WYATT:  Your Honor, if I may, there's one

20   more.  And I apologize.  I've marked on this case --

21             THE COURT:  All right.  Hand it up.  Hand it

22   up.

23             MR. WYATT:  It's the *Thomas* case.  It's a

24   New Hampshire Supreme Court case.

25             THE COURT:  I've read *Thomas* many times.  I

1  don't find any support in *Thomas* for the proposition

2  you're citing, but I'll have you point me to it in a

3  minute.  So let me read these other cases.

4        Okay.  So I've read *Jankovic*.  I don't

5  understand how that supports the point you're making at

6  all.  So how does it support the point that the fair

7  report privilege is not available to somebody unless

8  they actually read the records that they're describing?

9        MR. WYATT:  Your Honor, that case, I will --

10  would admit is probably the least supportive, but it

11  does talk about the proposition that it -- it must be

12  attributed to the official action of record that you're

13  citing --

14        THE COURT:  Yeah.  That -- and that's done in

15  this case.  Well, let me even ask a preliminary

16  question.

17        So we're all in agreement there are four

18  statements on which your claim's based --

19        MR. WYATT:  That's right.

20        THE COURT:  -- right?  So we look at each of

21  those four statements and each of them is attributed to

22  the pleadings.

23        MR. WYATT:  Well, your Honor, it doesn't

24  reference where they're drawn.  One of them, I don't

25  believe --

1          THE COURT:  Right.  There's a difference

2   between what they are attributed to and where they are

3   getting their information from.  You seem to have a view

4   that the law requires them to actually read the record

5   themselves in order to report on it.  I'm saying

6   *Jankovic* does not support that proposition.  They --

7   each of the four statements is attributed to the art --

8   to the pleadings, so that requirement is satisfied.  And

9   so we -- to the extent you say there's some additional

10  requirement that's not in New Hampshire law or in the

11  Restatement of Torts that they -- if they don't read it

12  themselves, they can't claim the privilege, we need to

13  examine that proposition.  But *Jankovic* doesn't support

14  that proposition.

15          Let me go on to read *Bufalino*.

16          All right.  So *Bufalino* is a Second Circuit

17  opinion from 1982.  I agree with you that it explores

18  the question of reliance under Pennsylvania law.  It

19  does note, however, that the -- the Pennsylvania law

20  that the -- that the district judge relied on for the

21  proposition that:  How a reporter gathers his

22  information concerning a judicial proceeding is

23  immaterial provided his story is a fair and

24  substantially accurate portrayal of the events in

25  question.

1          Take -- that's citing to the Pennsylvania

2    Supreme Court.

3          And then the Second Circuit says -- it limits

4    the extent of that to say that the privilege is

5    available only where a reporter who purports to report

6    on an official proceeding does not have personal

7    knowledge of the proceeding but instead relies on an

8    intermediary who does.

9          So you would agree with me that *Bufalino*, even

10   if it were the -- stated the law of New Hampshire

11   correctly, would recognize that the privilege was

12   available either if the reporter has knowledge of the

13   records or he relies on someone who does.  Because

14   that's what the Second Circuit construes the

15   New Hampshire -- the Pennsylvania Supreme Court

16   precedent to hold.

17          MR. WYATT:  I would agree that if the reporter

18   is aware of and relying on the actual court records they

19   are currently citing --

20          THE COURT:  Yeah.  So, for example, if someone

21   says to the reporter, I have read the court records, now

22   let me tell you what's in the court records, and

23   purports to tell what's in the court records to the

24   reporter and the reporter then produces a fair and

25   accurate description of what's in the records, the

1    reporter's entitled to the privilege, even under

2    *Bufalino*.  *Bufalino* deals only with a situation where

3    what the Second Circuit is concerned about is a reporter

4    produces some completely baseless reporting and it turns

5    out someone can find a record later on to bear that out.

6    And that's what the -- the *Bufalino* case deals with.

7              Do you agree with that?

8              MR. WYATT:  Yes, your Honor.  And I think that

9    it's our position is that's essentially what's happening

10   here --

11             THE COURT:  Okay.  I get it.  I didn't get it

12   from your pleadings.  I get it now.  You're making a

13   fourth argument, which is New Hampshire law should

14   include an exception to the fair report privilege so

15   that even where there's a fair and accurate report of a

16   pleading, where the report is attributed to a pleading,

17   that if the reporter acquires the information that

18   fairly and accurately reports the pleading from some

19   source unrelated to the pleading, that that can deprive

20   the reporter of the privilege.

21             MR. WYATT:  I don't want to -- I don't want to

22   quibble, but in this case, the only evidence that --

23             THE COURT:  I'm not interested in this case

24   now.  I'm trying to understand the legal propositions

25   that you're arguing.

1    You are making an argument that the fair

2 report privilege is available only when there's a fair

3 and accurate report of a proceeding, right?

4        MR. WYATT:  That's correct.

5        THE COURT:  And you say, factually, we have

6 sufficiently alleged, even when construing all the

7 documents that you can construe, that the article does

8 not fairly and accurately report what the pleadings say,

9 right?  That's your primary argument.

10       MR. WYATT:  I don't know that I -- it is an

11 argument.  I'm not sure --

12       THE COURT:  Okay.  I would say it's your

13 primary argument.  You can characterize it the way you

14 want.  Okay?

15       I also understand you to be making an argument

16 that the fair and accurate report privilege is subject

17 to an exception if the pleadings are reported on before

18 there has been judicial action on the matter in which

19 the pleadings have been filed.  Right?

20       MR. WYATT:  Correct, your Honor.

21       THE COURT:  Okay.  You're making that

22 argument.

23       I also understand you to be making an argument

24 that the fair report privilege does not apply where the

25 pleadings sufficiently allege that the defendant acted

1   with malice.

2           MR. WYATT:  That's right.

3           THE COURT:  Okay.  And now I understand you to

4   be making a fourth argument, which is the -- the fair

5   report privilege does not apply when a report of a

6   pleading is made without any reliance on what's in the

7   pleading.

8           MR. WYATT:  That's correct, your Honor.  And I

9   would direct you --

10          THE COURT:  Even if it's fair and accurate,

11  even if it's not made with malice, even if it's after a

12  judicial action in the proceeding, if it's -- if it is

13  made without reliance on the pleading, either directly

14  or indirectly, the privilege does not apply.

15          MR. WYATT:  Your Honor, I -- I agree.

16          THE COURT:  Just yes or no or that.

17          MR. WYATT:  Yes, I agree.  And I think if you

18  go read *Thomas* through this lens, you'll see there's a

19  discussion on page 333 about how the --

20          THE COURT:  Okay.  I'll get *Thomas* out.  I've

21  got a copy of that here.

22          MR. WYATT:  The discussion is, in essence,

23  there's some statements -- there were a bunch of

24  statements at issue in *Thomas*.  There was a subset of

25  them that -- that the media defendant argued should

1  qualify for the privilege and the Court held that they

2  could not grant summary judgment --

3            THE COURT:  What page did you say that you

4  want me to read?

5            MR. WYATT:  Page 333, your Honor.

6            MR. SULLIVAN:  May it please the Court, your

7  Honor.

8            THE COURT:  No, let me talk to him and then

9  I'll come back and talk to you.  Okay?

10            MR. SULLIVAN:  I just have different page

11  numbers on the *Thomas* case.  I'm just tying to find out

12  where -- exactly where we're going to be reading.

13            THE COURT:  So you don't have a New Hampshire

14  Report version of it?  If you have it -- even if you

15  have a Westlaw version, it should give the -- both the

16  New Hampshire Report cite and the Atlantic Reporter

17  cite.

18            What version do you have?

19            MR. SULLIVAN:  I have one from the Supreme

20  Court of New Hampshire, which the page numbers are just

21  1 --

22            THE COURT:  Do you have 155 N.H. 314?  That's

23  what *Thomas* is.  That's the --

24            MR. SULLIVAN:  Well, I have the *Thomas* case,

25  your Honor --

1          THE COURT:  Do you have a --

2          MR. SULLIVAN:  I just don't have the cites

3    that the Court is referencing.

4          THE COURT:  Okay.  You have to follow along

5    then because I'm citing to the New Hampshire Supreme

6    Court -- do the best you can.  I'm citing the

7    New Hampshire Supreme Court Official Reporter Version,

8    which is reported at 155 N.H. 314.

9          What is the page you want me to look at?

10          MR. WYATT:  Page 333, your Honor.  This is the

11    section of the opinion where the -- the media defendants

12    are arguing that certain sections are within the

13    privilege because they're, quote, derived from police

14    and court records.

15          THE COURT:  Okay.  It's in headnote 36.  I

16    don't know, Counsel, if you have it with headnotes, but

17    it's -- it begins on the paragraph:  We now turn to the

18    Telegraph defendants' second contention.

19          Is that what you want to talk to me about,

20    Counsel?  What is it you want to draw to my attention?

21          MR. WYATT:  In the paragraph, it says:  In

22    support of their position that statements 20 to 23

23    derived from official records --

24          THE COURT:  Okay.  I've got that.  That's on

25    page -- it's halfway between 333 and 334.  It's on page

1   1011 of the Atlantic Reports cite.  And you want me to

2   read that paragraph and you think that paragraph

3   supports your position?

4              MR. WYATT:  Oh, I'm sorry, your Honor, it's

5   two paragraphs up.  It begins:  The Telegraph defendants

6   argue that all of the statements attributable to the

7   officers --

8              They go on to decline the summary judgment

9   because it's unclear from that record --

10             THE COURT:  Wait a -- wait.  Let me read the

11  paragraphs.

12             Okay.  The paragraphs you're citing don't

13  support the position that you're taking.  They --

14  what -- if you read it carefully, what it says is:  With

15  respect to the records Gosselin allegedly summarized,

16  the Telegraph defendants cite pages 103 to 120 of the

17  appendix, all but two of which were documents dated

18  after the publication of the article.  Consequently, on

19  this record, we have no way of evaluating whether

20  Gosselin was relying upon or summarizing any given

21  record at the time of his interview.  Other police

22  records are also contained in the appendix, but neither

23  the Telegraph nor the defendants -- nor the officers'

24  affidavits explain which particular records the officers

25  relied upon at the time of the interview.  Thus, even

1   assuming the Telegraph defendants' argument is legally

2   correct, the absence of such an explanation and the

3   requirement that all inferences must be construed in

4   favor of the plaintiff mean that summary judgment was

5   correctly denied.

6          What they're saying there is the records in

7   that case don't allow the allegedly false statements to

8   be tied to any particular record.  Some of the records

9   were produced after the statements were made.  Others

10  are in there, but we can't tell which it was allegedly

11  tied to.

12         So I agree; to the extent somebody just blurts

13  out fair report privilege and points to a big mass of

14  records and says, it's in their somewhere, you can't

15  get -- but that doesn't -- you're arguing a very

16  different proposition that the Restatement (Second) does

17  not recognize at all.  There's nothing in the

18  Restatement (Second) that I've read that supports this

19  new exception that you're arguing for.

20         But I recognize that this -- you do cite these

21  out-of New Hampshire cases that suggest that at least in

22  circumstances where there is neither direct nor indirect

23  reliance on a record that the privilege is unavailable.

24  And you say there's neither direct -- you could find --

25  you -- construing this evidence in the light most

1   favorable to us, construing the record, the allegations

2   in the complaint and the documents that the complaint

3   references and that are records that a court can

4   consider on a 12(b)(6) motion, the complaint alleges a

5   plausible claim that the writer of the article neither

6   actually relied on directly nor indirectly relied on any

7   of the pleadings when he or she wrote the article.

8           That's -- and, therefore, it -- even if it's

9   accurate, even if it's not done with malice, and even if

10  it follows a judicial action, it's not protected by the

11  privilege.

12          MR. WYATT:  Correct.

13          THE COURT:  Okay.  Have we got any other

14  exceptions that you want to argue or have we now

15  captured of universe of them?

16          MR. WYATT:  That's the universe, your Honor.

17          THE COURT:  Okay.  All right.  So you say the

18  fair report privilege applies.  They say there are four

19  reasons why it does not.  Okay?

20          Now, it wasn't all that clear in their

21  pleadings, but I understand now that they have four

22  reasons, one of which we'll talk about first because

23  I've had some discussion with plaintiffs' counsel about

24  it, is an argument that even if the report is entirely

25  fair and accurate, even if it was not -- even if it was

1    made after judicial action and even if it was made

2    without malice, if the evidence in the case is -- if the

3    allegations are that the reporter neither -- relied

4    neither directly nor indirectly on the pleading that the

5    privilege is unavailable.

6                     What do you want to say to that argument?

7                     MR. SULLIVAN:  Thank you, your Honor.

8                     I'd cite first the Restatement of Torts

9    (Second), Section 611, subsection (e), which deals with

10   the necessity of official action in judicial

11   proceedings.  And it says, in part:  It is not

12   necessary, however, that a final disposition be made of

13   the matter in question.  It is enough that some judicial

14   action has been taken so that in the normal progress of

15   the proceeding, a final decision will be rendered.

16                    So Exhibit 2 to the plaintiffs' opposition --

17   memorandum in opposition contains the civil minutes of

18   the United States District Court for the Central

19   District of California, minutes of a proceeding dated

20   November 29, 2016, in which the Court deals with the

21   issues of Karpinski's allegation of sexual assault and

22   harassment and goes on to say:  Karpinski has posted

23   public accusations of sexual assault by Cahill on her

24   Instagram profile and other public websites.

25                    And I cite that language, your Honor, because

1    I'm going to refer to it again with respect to some of

2    the other counts in this complaint.  But clearly there

3    was judicial action --

4              THE COURT:  Okay.

5              MR. SULLIVAN:  -- taken in this proceeding.

6              THE COURT:  I want to give you a fair chance

7    here because I didn't understand him to be making this

8    argument.

9              So you're dealing with a different argument

10   than the one I've just asked you to address.  Okay?  He

11   has said there are four arguments in his pleadings.

12             MR. SULLIVAN:  Right.

13             THE COURT:  The official action is one of the

14   arguments, but we're not addressing that now.

15             MR. SULLIVAN:  I'm -- I'm sorry.  That's what

16   I thought you wanted me to address first --

17             THE COURT:  No.

18             MR. SULLIVAN:  -- the judicial action.

19             THE COURT:  Okay.  Let me explain it again.

20   Okay?

21             There are four arguments.  Argument number one

22   is it's not fair and accurate.

23             MR. SULLIVAN:  Oh, I'm sorry.

24             THE COURT:  We're not going to -- I'll tell

25   you which order to address them.

1          Argument number two is the defendants acted

2     with malice.

3          Argument number three is there was no official

4     action.

5          And argument number four, the one I want you

6     to address now, is a new argument that I didn't

7     understand -- I didn't find in his pleadings, but he's

8     told me is there and he's cited cases to support it.

9     The fourth argument is the one I want you to address

10    now.

11          MR. SULLIVAN:  Okay.

12          THE COURT:  That argument is that regardless

13    of these other problems, even if all those other

14    problems are solved, you can't claim the privilege

15    because your reporter did not rely either directly or

16    indirectly on any filings in the court case.

17          He says that first there's a legal question.

18    Is that an exception to the fair report privilege,

19    because the Restatement doesn't include it and I can't

20    find any New Hampshire law case that includes it, but he

21    has cited a -- at least once case, *Bufalino*, a Second

22    Circuit case, construing Pennsylvania law that seems to

23    suggest this pleading.  So there's this new exception.

24          So, one, is there this exception as a matter

25    of law and, two, if there is, does that exception apply

1   on the facts of this case?

2          So could you address that, those issues first?

3          MR. SULLIVAN:  I will, your Honor.

4          Number one, I don't think the exception does

5   apply to New Hampshire law.  If it ever were presented,

6   I think it would be very bad law to punish a publication

7   who presents a fair and accurate report of judicial

8   proceedings.

9          THE COURT:  Yeah, see, the -- I think one of

10  the reasons why the Restatement rule is crafted the way

11  it is is that the exception he's invoking really

12  requires delving into the facts of the case in most

13  instances to determine what the reporter actually did,

14  whereas the fair report privilege often can be

15  determined simply by take the article, take the report,

16  compare them, how -- how accurate does the article

17  report on the -- does the article report on the

18  pleading.  And if you have to then go and say, well, but

19  did you -- were there two intermediaries, were there

20  three, did he find something else, that would be quite

21  problematic.

22          I think the issue that the Court was getting

23  at in *Bufalino* is in a case in which a reporter reports

24  about something and then has nothing to do with a

25  pleading, but you find a pleading months later that

1    arguably says what the article says, can you claim the

2    privilege.  But that's not what we have here.

3              MR. SULLIVAN:  That's clearly not this case,

4    your Honor.

5              Number one, each of the complained-of

6    statements are taken directly from the pleadings in the

7    California case.

8              Secondly, and perhaps most importantly, I

9    don't believe those quotes -- and they're in quotes in

10   the complaint and in the story -- I don't believe are

11   contained in any of the information that was provided to

12   the Union Leader Corporation by this Denterlein PR

13   group.

14             THE COURT:  What -- can you tell me, is there

15   any dispute in this case as to what records were

16   provided from the Denterlein public relations person to

17   the reporter?

18             MR. SULLIVAN:  I'm aware only of the emails

19   that have been attached to the -- these pleadings and to

20   the deposition of Olivia Karpinski.  That for sure I

21   know was provided to Patricia Grossmith.

22             Now, that tells me that --

23             THE COURT:  Or the amended complaint provided.

24             MR. SULLIVAN:  I don't know.  I -- the only

25   thing I know for sure are the emails and the deposition.

1    That's all I've --

2            THE COURT:  Okay.

3            MR. SULLIVAN:  -- seen.  That's all I've been

4    able to obtain from my client.

5            THE COURT:  All right.  So -- and what do the

6    emails do?  Do they summarize what's in the -- in the

7    pleadings?

8            MR. SULLIVAN:  Not really.  I -- parts of the

9    pleadings are summarized in those emails, but certainly

10   I don't believe the direct quotes that are in the

11   Grossmith story and that are exactly from the pleadings

12   in the California case I do not believe were provided by

13   Denterlein.

14           THE COURT:  What do you -- what do the

15   plaintiffs allege about what the basis for the

16   reporter's report was?  Do you have allegations in your

17   complaint that allege that the reporter wrote the story

18   without looking at the -- any of the pleadings in the

19   underlying case?

20           MR. WYATT:  Your Honor, as far as we know,

21   we've only seen the emails --

22           THE COURT:  No, I'm asking what you allege in

23   your complaint.  What allegations are included in your

24   complaint?

25           This is hard for me because, as I said, I

1   couldn't understand that you were even making this

2   argument in your brief.  So that's why we're going to

3   have to pick it apart right now so I can fully

4   understand it.

5          What in your complaint do you allege about

6   the -- the way in which the four statements at issue

7   here were acquired by the -- the information supporting

8   those were acquired by the plaintiffs?

9          MR. WYATT:  Your Honor, I'm looking at

10   paragraph 30 of our complaint.  It says:  Upon

11   information and belief, Ms. Grossmith, the Union Leader

12   and its agents performed no independent investigation of

13   the facts and circumstances surrounding this California

14   litigation and took no or virtually no steps to verify

15   what Denterlein had presented to it.

16          THE COURT:  Okay.  So my -- again, I

17   misunderstood you.  I understood that to be a statement

18   that they didn't independently investigate to see

19   whether the allegations in the pleadings were true.  And

20   you agree there's no obligation to do that in order to

21   claim the fair report privilege.

22          MR. WYATT:  I would not agree, your Honor.

23          THE COURT:  Okay.  So -- we just have such --

24   I mean -- okay.

25          You know, I try to -- we've been preparing for

1   this case for a long time and that I can't even

2   understand what you're saying is really quite

3   frustrating to me.

4           I -- you are -- you are saying that -- tell me

5   again what Denterlein -- you allege about Denterlein and

6   the reporter.

7           MR. WYATT:  Paragraph 30 of the complaint

8   reads:  Upon information and belief, Ms. Grossmith, the

9   Union Leader and its agents performed no independent

10  investigation of the facts and circumstances surrounding

11  this California litigation and took no or virtually no

12  steps to verify what Denterlein presented to it.

13          THE COURT:  And what do you mean by verify

14  what to -- I understood verify to mean to ascertain the

15  truth of the facts.  Is that what you meant by verify?

16          MR. WYATT:  Yes, your Honor.

17          THE COURT:  Okay.  That's clearly wrong for

18  the fair report privilege.  So if what you meant by

19  verify -- verify that, in fact, these documents had been

20  filed in a court, but that's not what you meant.  You

21  meant verify that the underlying allegations are --

22  reflected in the pleadings are true.

23          MR. WYATT:  Your Honor, in context, this

24  allegation and complaint is talking about -- the

25  preceding allegations talk about email information that

1   was provided to Union Leader in the form of a summary

2   and that's what we're saying they did not verify.

3           THE COURT:  But -- okay.  Oh, this is going to

4   be a long afternoon, folks.

5           All right.  Let's pull out the individual

6   statements.  Okay?  We'll try it this way.

7           One of the three statements -- four

8   statements -- that you say is defamatory is the

9   following statement: Edalat and Karpinski also allegedly

10  planted THC and marijuana in the office of the

11  PharmaPak's chief scientist and then telephoned Irvine

12  Police to falsely report that the scientist and Cahill

13  were manufacturing and distributing illegal drugs, court

14  records state.

15          Right?  That is one of your our statements, is

16  it not?

17          MR. WYATT:  That's correct, your Honor.

18          THE COURT:  Okay.  Now, the court records

19  in this -- in the underlying case, there is an

20  allegation -- the second amended complaint in the case

21  says:  In early 2000 -- mid-2016, after plaintiffs

22  discovered the fraud described above, and in order to

23  attempt to further injure PharmaPak and defendant

24  Cahill, defendants Edalat and Karpinski, who have been

25  trafficking in illegal controlled substances in

1    violation of 21 U.S.C. Section 841 and California law,

2    planted in on around February 15, 2016, THC and

3    marijuana, both illegal controlled substances, in the

4    offices of the chief scientist of PharmaPak and then

5    called the local Irvine Police Department in order to

6    cause his arrest and the arrest of plaintiff Cahill, who

7    was then CEO of PharmaPak, all to further injure

8    PharmaPak.

9            That's right in the amended complaint, second

10   amended complaint, right?  That is the allegation that

11   is summarized in the statement I've read to you, which

12   is one of your defamatory statements.

13           What the fair report privilege is required --

14   is requiring that the statement fairly and accurately

15   report what's in the pleading.  It doesn't require any

16   independent investigation of what is in the pleading.

17   In fact, even if the newspaper knows the statement is

18   false, the privilege applies.  Do you think that's

19   wrong?

20           MR. WYATT:  I think -- as I read the

21   restatement, that's -- that's not how I read it, your

22   Honor.

23           THE COURT:  Okay.  So let's set aside this

24   now fourth argument, because it's going to create

25   tremendous -- we'll come back to it in -- towards the

1    end.  Let's try to start at the beginning.  Okay?  And

2    let's look at what the restatement says.  Okay?

3            And you -- your view is that New Hampshire

4    largely follows the Second Restatement, Section 611,

5    with respect to this fair report privilege, right?

6            MR. WYATT:  Yes, your Honor.

7            THE COURT:  Okay.  All right.  Here's what it

8    says:  The privilege is, therefore, one of general

9    publication and is not limited to publication to any

10   person or group of persons for the same reason the

11   privilege exists even though the publisher himself does

12   not believe the defamatory words report -- he reports to

13   be true and even when he knows them to be false.

14           I'm reading from the Restatement.  Right?

15           MR. WYATT:  Which comment, your Honor?

16           THE COURT:  I'm looking at comment (a),

17   character and privilege.  All right?  Tell me -- I mean,

18   at some point we have to agree on what -- you know,

19   basic things like what the Restatement says.  It says

20   specifically, even if you know it's false, you can get

21   the privilege.

22           MR. WYATT:  Right.  Your Honor, comment (e)

23   discusses specifically reporting on preliminary

24   complaints filed in court.

25           THE COURT:  Don't mix -- you have several

1   arguments, okay, one of which is an argument on malice

2   and you seem to be under the view that your concept of

3   malice can leave a newspaper liable for a -- an

4   otherwise fair and accurate report if the paper acted

5   with malice.  And you seem to say your version of malice

6   is -- fails to properly investigate and recklessly

7   report the truth.  Right?  That's your -- one of your

8   arguments.

9            MR. WYATT:  Yes, your Honor.

10           THE COURT:  And the -- the Restatement makes

11   clear that even when you know it's false, the privilege

12   is still available for you.  And I think that argument

13   about investigation fits under the -- under the argument

14   about malice.

15           And it -- and I think we need to go and look

16   at -- we need to look at *Thomas*, which you just cited to

17   me, and *Yohe*, which is a First Circuit case.  All right?

18   Are you familiar with those cases?  You're familiar with

19   *Thomas,* right?

20           MR. WYATT:  I am, your Honor.

21           THE COURT:  Okay.  If we turn to page 330,

22   the -- New Hampshire Supreme Court says:  However, that

23   is not the proper inquiry.  In the context of the fair

24   report privilege, the malice inquiry, to the extent it

25   is even properly before a court, focuses upon the

1   attitude of the defendant publisher vis-a-vis the

2   plaintiff.  The plaintiff cannot defeat summary judgment

3   wholesale on the fair report privilege by first

4   asserting malice on the part of police officers and then

5   attempting to impute the malice to the Telegraph

6   defendants by conclusory assertion, nor do allegations

7   that the Telegraph was careless amount to malice.

8   Arguments about the accuracy of the article bear upon

9   whether it was accurate and complete or a fair

10  abridgement of the occurrence reported.

11          And so they reject the conception of malice

12  that you're talking about.  And on the prior page they

13  make clear that -- they -- they cite the following from

14  *Yohe*:  The Court also noted that to defeat the fair

15  report privilege, a plaintiff must either show that the

16  publisher does not give fair -- a fair and accurate

17  report of the official statement or malice.  Taken

18  together, these two statements indicate that actual

19  malice cannot defeat the fair report privilege, but

20  common law malice can.

21          So what the court in *Thomas* is saying to you

22  is you are mistaken when you use the actual malice

23  standard of defamation to determine whether the fair

24  report privilege is unavailable to a -- a defendant.

25  Instead, it is the common law malice requirement that is

1  required, which requires proof of ill will, not failure

2  to verify.  Okay?

3          So where do you get this idea that a failure

4  to verify can support malice?

5          MR. WYATT:  I guess I would say, your Honor,

6  that failure to verify sheds light on the intent of the

7  actor.  And there are First Circuit cases saying that

8  reliance on a questionable source can constitute the

9  kind of malice that sacrifices the privilege.

10          THE COURT:  You're familiar with the

11  First Circuit's case in *Yohe*?  It discusses

12  Massachusetts law, but it is cited by the New Hampshire

13  Supreme Court favorably in *Thomas*.

14          Here's what the court says in *Yohe*:  The

15  privilege might still be vitiated by misconduct on the

16  newspaper's part, but that misconduct must amount to

17  more than negligent or even knowing republication of an

18  inaccurate official statement.  To defeat the privilege,

19  a plaintiff must either show that the publisher does not

20  give a fair and accurate report of the statement or

21  malice.  However, the Appeals Court of Massachusetts has

22  pointed out malice must require some redefinition if it

23  were not to comprehend knowing falsehood; perhaps

24  repetition of such falsehood with a purpose to do the

25  complainant maximum injury would still qualify as

1    malice.

2            See, you can't have the actual malice standard

3    apply here if what the Restatement says is true, which

4    is even the publication of a -- a knowing publication of

5    a false statement that accurately reports in a pleading

6    can't support a defamation claim because the fair report

7    privilege protects that statement.

8            So even a knowing -- the Union Leader could

9    have known that the statement was false and if it

10   accurately put -- reported what the statement says, it's

11   not -- it's protected by the fair report privilege.

12           So if that's true, then the conception of

13   malice that you are using, which is the actual malice

14   standard for whether a defamation can be maintained by a

15   public figure, applies here and it's not the right

16   standard because you can't use -- as the court in *Yohe*

17   noted and the court in the -- the New Hampshire Supreme

18   Court adopted, you can't have the privilege protect a

19   knowing -- publication of a knowingly false statement

20   and still subject that privilege to the actual malice

21   standard.

22           Is that -- am I being clear about what I'm

23   saying?

24           MR. WYATT:  I understand, your Honor.

25           THE COURT:  What's your response to that?

1          MR. WYATT:  Well, your Honor, if the standard

2     is that the article has to be published to cause injury,

3     with an intent to cause injury, we would say they --

4     they -- the way the article was drafted is the method by

5     which it did that, which is the inaccuracies of the

6     article.

7          THE COURT:  Okay.  Where in your complaint do

8     you allege that -- not the -- I -- look, I understand

9     the -- the party who is on the other side of this

10     lawsuit from your client, his motivations we're not

11     going to speculate about.  But I didn't see anything in

12     your complaint that said the Union Leader was acting out

13     of ill will towards your client.  I see something -- you

14     use the word malice, but you use it in the conclusory

15     way and it's clear from your motion that -- your

16     response to the motion to dismiss that you're using the

17     actual malice standard, not the common law malice

18     standard, which the supreme court says you have to use.

19          What is it there in your complaint that says

20     that the Union Leader acted with a bad motivation to

21     harm your client rather than simply reporting what's in

22     the records?

23          MR. WYATT:  Your Honor, paragraph 44 of the

24     complaint says as follows.  Quote:  The Union Leader,

25     Ms. Grossmith, and its agent acted maliciously and were

1　well aware that they published the foregoing false

2　and/or misleading statements of fact and did so in the

3　larger context of a one-sided article aiming to, open

4　parentheses, or substantially certain to, closed

5　parentheses, malign the reputations and standing --

6　　　　　　　THE COURT:  Well, okay.  Aiming or.  That --

7　you know, that is -- what you're really saying is

8　because it hurt them, we must conclude that they were

9　trying to hurt them.

10　　　　　　　That -- I don't think that's a sufficient

11　pleading to show -- to plead malice.  Are you going to

12　really prove that the -- if I let you go forward -- that

13　they were doing it with the purpose to injure, not just

14　because they want to make scurrilous allegations because

15　they will sell papers?  Because let's suppose they knew

16　it was false and they said, oh, this will be great,

17　it'll sell some papers.  That isn't with an

18　interpretation to injure.

19　　　　　　　Because underlying -- you see, underlying the

20　fair report privilege is a public policy that encourages

21　the publication of what's in official proceedings and

22　public documents.  There's a public interest in knowing

23　what allegations are being made in official court

24　filings.  So we don't want to punish people who report

25　accurately what's in court filings and we don't want to

1    have them be required to investigate the truth of those

2    allegations because there's a sufficient public interest

3    in having them publicized that we don't want to subject

4    the person doing the publication to punishment if it

5    turns out that what's in the pleading is false and

6    damaging.

7              So, you know, I -- okay.  So I -- I take your

8    point.  You're saying that that language you quote is

9    sufficient to create a -- a plausible -- to allege a

10   plausible claim.

11             MR. WYATT:  Well, your Honor, there's another

12   allegation.  Paragraph 46 says as follows:  In a further

13   attempt to humiliate Ms. Karpinski and damage her

14   reputation in her local community, the article's

15   headline exploited the fact that Ms. Karpinski was a

16   New Hampshire pageant finalist.  Ms. Karpinski had

17   developed an excellent reputation in her community and

18   the pageant community through hard work, volunteerism,

19   and the like.

20             THE COURT:  All right.  I'll make note of

21   that, but are you really going to try to prove the Union

22   Leader was trying to injure her?  That's what -- because

23   that's what you would have to prove.  Otherwise, you

24   would go through and spend all this time and money and

25   acquire zero.  Okay?  Are you really going to prove

1  that?

2          MR. WYATT:  Your Honor, we've alleged it and

3  we would press it as a basis.

4          THE COURT:  Okay.  But I -- if I let the case

5  go through on that basis, you better end up having a

6  good faith basis for it or you should abandon the claim.

7  Because that -- you're going to have to prove common law

8  malice.  You can't prove that it's damaging to

9  Ms. Karpinski.  Do you understand?

10         MR. WYATT:  I understand.

11         THE COURT:  All right.  I mean, I think it's a

12 very strained pleading.  Whether it's sufficient or not

13 I'll take under advisement.  I recognize that you can

14 plead scienter generally under Rule 8, but you're going

15 to have to prove scienter and you're going have to

16 survive summary judgment, you're going to have to have a

17 triable case that you can -- a jury could find scienter

18 here, that is, that they were acting out of an ill will

19 and not simply reporting what's in a pleading.

20         What do you -- so we've now moved into malice.

21 What do you say to his malice argument?

22         MR. SULLIVAN:  I think it's just a naked

23 conclusory allegation without any factual allegations in

24 support.  I cite the case of *Drake vs. Town of New*

25 *Boston* on two counts here.  Drake's complaint is utterly

1  lacking any factual allegations that would support a

2  plausible inference that the defendants entered into an

3  agreement to conspire against her.  And I cite that on

4  the conspiracy count, but I also cite it on the malice

5  allegation.  They just allege it with no factual

6  support.

7          That *Drake v. Town of New Boston* is --

8          THE COURT:  I have it.  I've read it.

9          MR. SULLIVAN:  Thank you, your Honor.

10          I'd like to point out some things about the

11  article itself, your Honor, if I may.

12          THE COURT:  Well, I'd like to deal with it in

13  an organized way.

14          MR. SULLIVAN:  On this issue.

15          THE COURT:  On malice.

16          MR. SULLIVAN:  On this issue.

17          THE COURT:  Yeah.

18          MR. SULLIVAN:  The very beginning of the

19  article, the reporter calls Attorney Saied Kashani of

20  Los Angeles, who represents both Karpinski & Edalat.  He

21  said:  They will prove at trial, which is slated to

22  begin July 24th, that there is no merit to the lawsuit

23  and that Karpinski, who he described as a junior

24  employee, was unfairly dragged into it.

25          Later on in the article, Kashani again --

1    Kashani said his clients deny the allegations and said

2    the lawsuit was a preemptive strike against Karpinski,

3    who was preparing her own lawsuit against Cahill for

4    wrongful termination.

5            There's no -- there's no bias, there's no

6    malice.  This is both sides -- counsel for both sides of

7    the parties in the California suit were contacted and

8    quoted in the article.

9            I have other things to get back to, your

10   Honor --

11           THE COURT:  Well --

12           MR. SULLIVAN:  -- but the malice --

13           THE COURT:  -- we'll do it my way and then

14   I'll give you a chance at the end --

15           MR. SULLIVAN:  All right.

16           THE COURT:  -- to say anything you want to

17   say.

18           MR. SULLIVAN:  All right.  Well, the malice

19   is -- it's a conclusory allegation.  It's not sufficient

20   to survive a motion to dismiss.

21           THE COURT:  All right.  So he's got -- you've

22   identified those alligations in the complaint that you

23   say sufficiently plead malice, right?  There's nothing

24   else in your compliant that you say pleads malice?

25           MR. WYATT:  Your Honor, I would -- I'm not

1  prepared to abandon anything in the complaint --

2          THE COURT:  Well, no, but you need to tell

3  me -- if there's more, you need to -- now is your chance

4  to tell me, because you're on the verge of me rejecting

5  your malice argument.  So if there's more in the

6  complaint that you say supports malice pleading,

7  identify it now.

8          MR. WYATT:  Well, your Honor, for one, the

9  Union Leader eventually did take this article down.

10          THE COURT:  Look at the complaint.  Tell me

11  what's in the complaint that alleges malice.

12          MR. WYATT:  Paragraph 60, your Honor,

13  discusses about how after the trial, Ms. Karpinski

14  emailed Mr. -- is it Spiner? --

15          MR. SULLIVAN:  Yes.

16          MR. WYATT:  -- Mr. Spiner and -- to, quote,

17  set the record straight, to explain the trial outcome,

18  to make the Union Leader understand the harm its article

19  caused and was still causing, to provide links to

20  articles referencing the trial outcome, and to request a

21  retraction, yet Mr. Spiner and the Union Leader refused

22  to remove the article, causing further harm to the

23  plaintiffs.  Mr. Spiner failed to have the article taken

24  down, apparently failed to research or investigate the

25  article in much the same way as Ms. Grossmith, even

1    knowing the trial outcome, and in that regard,

2    Mr. Spiner is complicit and individually at fault and

3    liable for the Union Leader's --

4                THE COURT:  So the failure to retract is

5    evidence of malice --

6                MR. WYATT:  Once.

7                THE COURT:  -- was malice pleading, in your

8    view.

9                MR. WYATT:  Once they knew the harm had been

10   caused, your Honor, not only did they not take it down,

11   but then they eventually did take it down.

12               And the next paragraph of the complaint,

13   paragraph 61, says:  Only recently, after being named in

14   a suit in California --

15               THE COURT:  So evidence that they didn't take

16   it down is evidence of malice and evidence that they did

17   take it down is evidence of malice.  That's what you're

18   saying?

19               MR. WYATT:  Correct, your Honor.

20               THE COURT:  So everything they do is malice,

21   malice, malice.  Because if they leave it up, that's

22   malice; if they take it down, that's malice.

23               MR. WYATT:  Your Honor, it -- you pose a

24   question of did they know and intend to cause her harm.

25   I believe these facts --

1          THE COURT:  It's not no; it's did they intend

2   to -- it's did they act out of ill will, which is what

3   malice is.

4          And -- okay.  So you've identified -- is there

5   anything else?  I will comment on all of this in the

6   order that I write.  Is there anything else?

7          MR. WYATT:  Well, I think the -- the

8   suggestion, your Honor, that Ms. Karpinski recanted her

9   sexual harassment allegations under oath is inaccurate

10  to the point of being malice.

11          THE COURT:  Okay.  So that it's so inaccurate

12  that you can infer maliciousness from it.

13          MR. WYATT:  Yes, your Honor --

14          THE COURT:  Okay.

15          MR. WYATT:  -- particularly where she was

16  provided --

17          THE COURT:  I'd just ask my clerk to make note

18  of each of these because we're going to have to try to

19  take it up in the order.

20          All right.  Anything else on malice?

21          MR. WYATT:  No, your Honor.

22          THE COURT:  Okay.  All right.

23          What else did you want to say on malice?

24          MR. SULLIVAN:  I'd like to respond to that

25  last point, your Honor.

1          The deposition of Olivia Karpinski has been

2   submitted.

3          Did he ever touch you at any time -- did he

4   ever at any time touch you in or around your breast

5   area --

6          THE COURT:  Okay.  I've read that.  I'm going

7   to deal with that on fair and accurate, not on malice.

8   Okay?  So we'll come back to it.

9          Okay.  Anything else on malice?

10          MR. SULLIVAN:  No.

11          THE COURT:  Okay.

12          MR. SULLIVAN:  There's no factual support for

13   a malice complaint.

14          THE COURT:  Yeah, I -- I -- I'm inclined to

15   agree with you on that point because I think the

16   pleading on malice is so bare and conclusory as to not

17   sufficiently plead a plausible claim that if the fair

18   report privilege is otherwise applicable, it should be

19   denied to the defendant here because they acted out of

20   ill will in publishing the article.

21          I see a few bare, conclusory allegations.

22   What I'm going to try to do is reconcile the fact that

23   scienter can be pleaded generally with language in *Iqbal*

24   and *Twombly* and First Circuit precedent interpreting

25   *Iqbal* and *Twombly* that at the 12(b)(6) stage, you should

1    strip out conclusory allegations from the complaint and

2    look at what remains and ask whether it pleads a

3    plausible claim.

4              That's the ordinary standard I should use.

5    And yet when it comes to a scienter allegation like ill

6    will, those ordinarily can be pleaded generally and

7    survive a 12(b)(6) analysis.  So I'm going to try to

8    analyze those particular issues.  Okay?

9              All right.  Let's move on.  I think maybe

10   we'll get -- make with more -- make more headway if we

11   deal with the plaintiffs' claim that the statements are

12   not fair and accurate.

13             You -- you allege that they don't accurately

14   report what's in the pleadings; is that right?

15             MR. WYATT:  Yes, your Honor, or it's not a

16   fair abridgement, in some instances.

17             THE COURT:  Okay.  Let's look at each one of

18   these statements and then let's look at the

19   corresponding language in the pleadings and you tell me

20   why that isn't a fair and accurate report of what's in

21   the pleading.

22             The first two defamatory statements that you

23   allege are the following:  A former beauty queen from

24   Auburn is among those being sued in California in a

25   fraud case involving allegations that at least 2.3

1   million of investors' money in a pharmaceutical company

2   was used on junkets to Las Vegas and other lavish items.

3               Okay?  So that's the first statement.

4               And the related second statement is:  While

5   Karpinski was working for PharmaPak, she traveled to

6   Las Vegas and, along with Edalat, wined and dined

7   potential investors for Sentar Pharmaceuticals, another

8   company formed by Edalat.  PharmaPak was billed for the

9   expenses, according to Cahill.

10              The second amended complaint contains the

11  following allegation:  In addition to fraudulently

12  stating her experience in order to perpetrate a fraud on

13  PharmaPak, Karpinski and Edalat also fraudulently stated

14  that what she was doing after she was -- fraudulently

15  stated what she was doing after she was hired.  In

16  furtherance of the scheme to defraud PharmaPak,

17  Karpinski was placed on the payroll of PharmaPak in

18  June of 2015 and until PharmaPak was forced to cease

19  operations in early March 2016 because it had no money

20  with which to operate.  Karpinski spent most of her time

21  not working on PharmaPak matters, but, rather, working

22  with Edalat to further develop Global Holdings d/b/a

23  Sentar Pharmaceuticals by seeking investors for it.

24  Edalat and Karpinski promoted Global Holdings, d/b/a

25  Sentar Pharmaceuticals, by traveling to Las Vegas,

1   Nevada, and Beverly Hills on frequent occasions and,

2   using PharmaPak funds, lavishly entertained prospective

3   customers and investors for Global Holdings d/b/a Sentar

4   Pharmaceuticals while falsely stating to Bruce Cahill

5   and others at PharmaPak that they were engaging in this

6   promotional activity in order to further PharmaPak by

7   obtaining sales contracts for PharmaPak.

8              How do these two statements -- are they not a

9   fair and accurate report of what I have just read to

10  you?

11             MR. WYATT:  Your Honor, your question gets

12  at -- and I agree with it, that the report maps onto

13  certain allegations in the second amended complaint.  I

14  do not dispute that.

15             What we do dispute is that -- and I know this

16  is an issue -- this is another issue we haven't really

17  talked about, but whether the -- that complaint itself

18  can form the basis for a report.

19             Putting that aside, we would say that plucking

20  these two allegations out of that second amended

21  complaint alone and making these assertions without any

22  discussion of the other things in the complaint or the

23  litigation generally is not a fair abridgement of what

24  was occurring in that litigation.

25             THE COURT:  The -- you are not alleging that

1   the whole complaint is -- the whole article is

2   defamatory.  You have identified the defamatory

3   statements.  What is it about what's in this -- the

4   article, these two statements that I've read, that

5   doesn't -- isn't -- doesn't fairly and accurately

6   describe the excerpt from the pleading I've read to you?

7           MR. WYATT:  Our view, your Honor, is that the

8   way they're abridged and taken is to make it look like

9   Cahill was the victim.

10          THE COURT:  That's what he was alleging in the

11  complaint.  He was alleging that he was the victim and

12  the article reports that he was alleging these things.

13  And it also reported that she denied them.

14          MR. WYATT:  Well, your Honor, it did have a

15  couple of base-tagging exercises where it had

16  statements, she denied them, but the gist and the sting

17  of the article, which is what's supposed to be reviewed,

18  is that Cahill was the victim of their conduct.

19          THE COURT:  That's what the complaint alleges.

20          MR. WYATT:  I -- well, I agree that --

21          THE COURT:  You should have -- what you're

22  really after is they never should have reported what

23  Cahill was claiming about her.

24          MR. WYATT:  I agree with that, your Honor.

25          THE COURT:  Yeah.

1          MR. WYATT:  Or --

2          THE COURT:  And that's completely wrong,

3    though.  If you think that's what I think the law is,

4    you're completely misunderstanding the law.

5          The -- the newspaper, as I said -- we have a

6    fair report privilege because the New Hampshire Supreme

7    Court, adopting the reasoning of the Restatement

8    (Second), has decided that there is an important public

9    interest served by reporting on occurrences in official

10   proceedings and whether those allegations in official

11   reports are true or false does not matter.  The -- there

12   is a public policy that encourages the accurate report

13   of those allegations.

14          And this -- these two statements, in my mind,

15   appear to track exactly on an allegation from the

16   amended complaint.  And if I -- and your response to

17   this, so that I understand it, is while that may be true

18   when read in isolation, if you read all of the filings

19   in the case, a fair report would have said something

20   different.  What is it that the fair report would have

21   said?

22          MR. WYATT:  Well, your Honor, backing up, I --

23   I guess I'm looking at comment (e) of the Restatement to

24   say there's --

25          THE COURT:  Don't shift on me.  We're going to

1   come back and I'll give you a full and fair opportunity

2   to argue comment (e) --

3           MR. WYATT:  Okay.

4           THE COURT:  -- which deals with this issue of

5   whether there has been judicial action.  Okay?  So

6   you'll get your chance on that.

7           MR. WYATT:  Okay.

8           THE COURT:  I don't know why lawyers cannot

9   seem to understand you need to deal with each legal

10  argument on its own.  Don't shift back and forth.  You

11  have an argument here that this is not a fair and

12  accurate report.  Right?

13          MR. WYATT:  Yes, your Honor.

14          THE COURT:  And I'm evaluating that argument

15  now.

16          So, tell me, is -- what is it that this

17  paragraph -- statement one and statement two should have

18  included that they did not include in order -- that --

19  in ways that prevented it from being fair and accurate?

20          MR. WYATT:  It did not report the fact that it

21  was in Mr. Cahill's second amended complaint, not his

22  prior two complaints; it made no mention of Olivia and

23  Paul's claims again Mr. Cahill themselves; and it made

24  no -- no mention -- well, this was -- this will be one

25  of the other defamatory statements.

1          Those are the propositions, your Honor.

2          THE COURT:  Okay.  All right.  Let's go to the

3     third statement.  I've already read it to you once and

4     I've also read what's in the amended complaint.

5          Again, that statement appears to track

6     directly language in the -- I believe it's the second

7     amended complaint.  And can you tell me what is not fair

8     or accurate about the reporting of that statement?

9          MR. WYATT:  The same, your Honor, that it --

10    it does not make clear that these were in his second

11    amended complaint and not the prior two complaints and

12    it does not describe the claims that were filed against

13    Mr. Cahill.

14         THE COURT:  All right.  So it doesn't describe

15    what her counterclaims are and Edalat's counterclaims.

16    You think the article had to do that in order to be fair

17    and accurate.

18         MR. WYATT:  Yes, your Honor.  And to be fair,

19    it does make a mention of the sexual harassment

20    counterclaim, which is the other defamatory statement.

21         THE COURT:  Okay.  The first three, it seems

22    to me, are completely accurate summaries of filings in

23    the second amended complaint.  I -- I don't see how we

24    could conclude otherwise.  They track the language

25    pretty much exactly.

1           I -- I do want to ask defendants' counsel to

2    help me on the fourth statement.  Let me first read the

3    statement.

4           And so Edalat had accused Cahill of sexually

5    harassing Karpinski, but under oath she later admitted

6    that the allegations were baseless, according to court

7    records.

8           Do the underlying pleadings in this case

9    allege that -- in the California case -- ever contain an

10   allegation that Edalat has accused Cahill of sexually

11   harassing Karpinski?

12          MR. SULLIVAN:  Yes, your Honor.

13          THE COURT:  Show me what that is.  Sexually

14   harassing.

15          MR. SULLIVAN:  Cahill's second amended

16   complaint, your Honor, page 72.

17          THE COURT:  And could you read slowly the

18   allegation that you say Edalat accuses him of --

19          MR. SULLIVAN:  Yes.

20          THE COURT:  -- sexually harassing Karpinski.

21          MR. SULLIVAN:  I'm sorry.  It's -- oh, yeah,

22   page 72, paragraph 156, subparagraph (d).

23          THE COURT:  Would you read it?

24          MR. SULLIVAN:  Stated Cahill was trying to

25   #slutshame Olivia Karpinski and -- these are Edalat --

1    if I back up, 156, specifically, Edalat has made and

2    published the following false written statements about

3    Cahill and Scott on the following dates.

4              And then if we drop down to (d):  Stated

5    Cahill was trying to slut-shame Olivia Karpinski and

6    turn his victim into a guilty party after previously

7    posting about Karpinski's false claims of sexual assault

8    against Cahill, which are the subject of the defamation

9    claim against Karpinski below.

10             THE COURT:  How does that amount to a -- a

11   report that Edalat was accusing Cahill of sexually

12   harassing Karpinski?

13             MR. SULLIVAN:  Cahill states that Edalat had

14   posted false claims of sexual assault against Cahill on

15   previous occasions.

16             THE COURT:  Read that to me again.  Actually,

17   give me the -- pull the page out of your notebook and

18   let me look at it.

19             Okay.  (d) is a report -- is Edalat reporting

20   on a social media forum that stated Cahill was trying to

21   slut-shame Karpinski and turn his victim into a guilty

22   party.  That isn't an allegation that Cahill sexually

23   harassed Karpinski --

24             MR. SULLIVAN:  It goes on, your Honor.  Sorry.

25             THE COURT:  You can tell by the tone of my

1    voice I was going to finish the clause, right?  Okay.

2          So then there's a parenthetical and then says:

3    After previously reporting about Karpinski's false

4    claims of sexual assault against Cahill -- so this is

5    Cahill posting about Karpinski's false claim of sexual

6    assault.

7          MR. SULLIVAN:  No, your Honor.  It's Edalat

8    posting.  If you go to the top of where 156 begins --

9          THE COURT:  Yes, but it talks about Cahill --

10   Edalat posting about Cahill's statement and then says,

11   paren, after previously posing about Karpinski's false

12   claims, that -- what's in the parenthetical is

13   describing what Cahill was saying.

14         MR. SULLIVAN:  No, your Honor.  I think you're

15   not reading that correctly.  This is --

16         THE COURT:  I think you're not reading it

17   correctly.  And until we get to the Court of Appeals,

18   it's going to be my reading that controls, not yours.

19         MR. SULLIVAN:  Understood, your Honor.

20         I will go on to say, however, that even if --

21   and I don't accept the Court's understanding of that

22   phraseology, but even if that is so --

23         THE COURT:  So you have -- the way you read

24   this parenthetical, after previously posting about

25   Karpinski's claim -- false claims of sexual harassment,

1  you -- Edalat's posting about Karpinski's false

2  statements of sexual harassment.  That's what you think

3  it's saying?

4          MR. SULLIVAN:  Yeah.  That's what --

5          THE COURT:  Edalat is aligned with Karpinski.

6  Edalat's not going to post -- make postings that say

7  Karpinski's making false claims of sexual harassment, is

8  she -- is he?

9          MR. SULLIVAN:  This is Cahill talking, saying

10  Edalat is posting about Karpinski's false allegations.

11  Cahill is saying --

12          THE COURT:  It's about Cahill.  Yeah, it's

13  about Cahill posting.

14          MR. SULLIVAN:  No.

15          THE COURT:  It's about Edalat posting about

16  Cahill's posting.  That's what it is.  Because -- you're

17  not -- you're really saying that Edalat was making --

18  filing posts accusing Karpinski of making false

19  statements of sexual harassment?

20          MR. SULLIVAN:  No, no.

21          THE COURT:  Of course not.

22          MR. SULLIVAN:  No.  Cahill is saying Edalat is

23  posting the false allegations.

24          Let me say this, your Honor, please.  Even if

25  Edalat had never said that Karpinski is alleging this,

1    that's not capable of a defamatory meaning.

2           THE COURT:  See, now you're -- I happen to

3    agree with you on that point.  I'm trying to establish

4    the preliminary point.

5           The preliminary point, which I think is -- I

6    don't -- I did not find in the pleadings a -- an

7    allegation that Edalat claimed that Karpinski was being

8    sexually harassed by Cahill.  I did not find that in the

9    pleadings.  There's plenty of pleadings by Karpinski

10   that Cahill was committing sexual harassment.  So the --

11   and you have -- for example, Karpinski's cross-complaint

12   alleges, quote, Cahill sexually harassed Karpinski and

13   created a hostile work environment.

14          That's as clear as day that Karpinski was

15   accusing Cahill of sexual harassment in the pleadings.

16   I did not find -- and, frankly, I'm going to -- I'll go

17   back and read this whole document, but to the extent you

18   think this amounts to an allegation by Edalat that

19   Cahill was sexually harassing Karpinski, I say that's

20   not how I read it.

21          But the second point, which we were going to

22   get to after that, is why would that be defamatory

23   against Edalat in any event?  You know, just simply that

24   someone makes a complaint that someone else is being

25   sexually harassed is not in any way defamatory.

1          MR. SULLIVAN:  It's one of the first things I

2    was going to say today, had I gone in my own ordinary --

3          THE COURT:  I know, but we get to do things my

4    way because I spend days and days of thinking about the

5    problem and I need to have a lot of questions answered.

6    When we get done, I'll let you talk for two hours if you

7    want, but I've tried to understand the law and the facts

8    in this case so I spend a lot of time doing that and I

9    want to have answers to my questions.  So that's why we

10   do it the way we do it.

11         Okay.  So the first part of that is I -- I'm

12   not sure that I agree with counsel's characterization

13   that the underlying pleadings clearly allege that Edalat

14   was accusing Cahill of sexually harassing Karpinski.  So

15   I -- I think you may be correct on that point that

16   there's a technical inaccuracy in the -- in that part of

17   the fourth statement.  But why does that matter?  It's

18   an inconsequential -- it certainly isn't defamatory as

19   to Edalat.

20         MR. WYATT:  Your Honor, for a couple reasons.

21   One, with respect to Edalat, it suggests that -- that he

22   is using or trivializing someone's sexual harassment

23   claim.

24         THE COURT:  It doesn't say he made a false --

25   he was falsely reporting that Cahill was sexually

1    harassing Karpinski.  He just reported that she was --

2    he was.

3            MR. WYATT:  As I understand this -- this

4    clause, and it says, Edalat has accused Cahill of

5    sexually harassing Karpinski.  It could be read to

6    suggest that he has asserted some kind of claim based on

7    that against Cahill.  And in our view, that

8    trivializes --

9            THE COURT:  But it doesn't in any way suggest

10   that Edalat's claim is false, it's manufactured, or

11   anything like that.  So I don't see how it defames -- if

12   you -- if you saw something happening in the hallway

13   with a lawyer and a woman -- a male lawyer and a woman

14   witness and you thought there was sexual harassment and

15   you complained about it, would that be defamatory?

16   Whether or not it was true, it's not defamatory about

17   you.  It doesn't reflect badly on your character.  So I

18   don't see how that part of the statement could be

19   consequential for a defamation claim.

20           MR. WYATT:  Your Honor, it might -- it would

21   reflect poorly on you if it was understood to mean that

22   you were using that as a bargaining chip.

23           THE COURT:  I -- yeah, I don't see how you can

24   read that, though, into the statement or anywhere into

25   the article that that -- that that is so.  So I think

1   that's part of the struggle.

2            So let's try to look at the fourth statement.

3            MR. WYATT:  Can I say one more thing, your

4   Honor?

5            THE COURT:  Yes.  Do you want to say one more

6   on the Edalat part of it?

7            MR. WYATT:  Well, it's on the Karpinski side

8   of the fence.

9            THE COURT:  Well, we're going to talk about --

10  yeah, we're going to talk about that in just a second.

11           Okay.  There are two parts to this statement

12  under your theory.  One is a claim that Edalat has, that

13  he's being defamed by the fourth statement --

14           MR. WYATT:  Correct.

15           THE COURT:  -- and the other is a claim that

16  Karpinski is being defamed by what's said about her in

17  the statement, right?

18           MR. WYATT:  That's right.

19           THE COURT:  Okay.  And I want to talk about

20  that second part of it now.

21           And I guess let me ask defendants' counsel.

22           It does appear that technically the pleadings

23  do not reflect that Karpinski ever admitted under oath

24  that her sexual harassment allegations were baseless.

25  There is information that would support an allegation

1   that she admitted under oath that the sexual assault

2   charge she made with the police was baseless.  Do you

3   agree that there is nothing in the pleadings that you

4   can point to that is an express statement that she

5   admitted under oath that her sexual harassment

6   allegations were false?

7           MR. SULLIVAN:  I do, your Honor.

8           THE COURT:  What do you point to?

9           MR. SULLIVAN:  I do admit.

10          THE COURT:  Oh, you do admit?  Okay.

11          So your view, as I understand it, is

12  essentially, Judge, this is fair and accurate because

13  the pleadings clearly allege that she made an allegation

14  of sexual assault that she later acknowledged under oath

15  was baseless.  And that allegation is in the -- I

16  believe the second amended complaint exactly that way.

17          And what you're saying is that you need to

18  read this in a commonsense way, the way it would be

19  understood by a layperson, and the distinction between

20  sexual harassment, which is a basis for civil liability,

21  and sexual assault, which is a basis for criminal

22  liability, is not one that the average person would

23  understand and, in any event, it is far worse to make a

24  false allegation of criminal sexual assault than it is

25  of sexual harassment, so if that inaccuracy had been

1    corrected, the -- the allegation would have been far

2    more damaging to Ms. Karpinski than what was actually

3    reported.

4              MR. SULLIVAN:  That's correct, your Honor.

5              THE COURT:  That would be, I think, your

6    position, wouldn't it?

7              MR. SULLIVAN:  That is entirely correct, your

8    Honor, and I think, frankly, that the reporter failed to

9    make that distinction when writing this story.

10             THE COURT:  Because that's something lawyers

11   would understand, but not necessarily laypeople.

12             MR. SULLIVAN:  Yes, your Honor.

13             THE COURT:  Okay.  So you understand what his

14   response is to the second part of this?  He concedes

15   that the pleadings in the underlying case do not contain

16   a statement that Ms. Karpinski admitted under oath that

17   her sexual harassment claims were baseless.  He concedes

18   that.  What he says is the pleadings say that she

19   admitted under oath that her sexual assault allegation

20   was baseless.  The sexual assault allegation, by the

21   way, is the sexual assault allegation that forms the

22   principal basis for the sexual harassment claim.  And

23   she -- according to Cahill's side of the matter, Cahill

24   alleges that she made a -- a sexual assault complaint

25   and then she later admitted under oath that it was

1    not -- that it was baseless.  And that's pretty much

2    exactly what the amended complaint says.

3              Now, whether that's accurate or inaccurate is

4    a different matter, but that's what the amended

5    complaint says.  What's your response to that?

6              MR. WYATT:  Can I ask which paragraph of the

7    second amended complaint --

8              THE COURT:  Yeah, I'll get it for you.  Let me

9    pull it out.  And I'm sorry I might not have it in the

10   second amended complaint.  It's Memorandum in Support of

11   Motion to Restrain Unlawful Conduct by Defendants and to

12   Advance the Trial Date in this Action.  I think it's in

13   that document.

14             Here's a statement on page -- that's

15   document -- in the underlying case, it's document 94-1

16   and it's on page 9.

17             None of these highly damaging italicized

18   accusations are true.  By far, the most damaging

19   accusation, that Mr. Cahill sexually assaulted

20   Karpinski, was actually admitted by her to be false just

21   days ago when Karpinski's deposition was taken on

22   October 14th, 2016.  She admitted that the only physical

23   contact she even claims that Karpinski -- that

24   Mr. Cahill had with her, and he denies even that, was

25   supposedly once kissing her on the cheek after she was

1    given a promotion based on sales orders she promised she

2    had obtained, paren, never delivered, and touching her

3    shoulder.

4            And then on the next page:  Yet despite having

5    now admitted under oath that nothing like sexual assault

6    ever occurred, Karpinski has posted web pages that

7    proclaim to the world that Mr. Cahill sexually assaulted

8    her and she refused to take down these false statements

9    despite demand that she do so.

10           That seems to be a pretty clear-cut allegation

11   that Ms. Karpinski made a sexual assault claim against

12   Mr. Cahill and later admitted under oath that it was

13   not -- that it was baseless.

14           MR. WYATT:  So, your Honor, just to break that

15   down, I would take issue with the way -- I don't think

16   it's fair and accurate the way the statement is written.

17   It definitively says, under oath, she later admitted the

18   allegations were baseless, according to court records.

19           It -- it's saying before you get to the issue

20   of harassment versus assault, that it is a fact that she

21   did recant her statement, which there was no finding --

22   there -- that may have been argued at some level by

23   Mr. Cahill in the preliminary injunction motion, but the

24   way this is written, the way it should have said, if

25   that's their position, is under oath -- well, according

1   to Mr. Cahill's preliminary injunction motion, which was

2   later denied, that was his position.

3          THE COURT:  Yeah.  He says twice, was later

4   admitted by her to be false just days ago, and yet now

5   having admitted under oath that nothing like sexual

6   assault ever occurred.

7          Isn't that a reasonable take?  If he had said

8   in the article the -- the pleadings in the case allege

9   that Ms. Karpinski made a claim of sexual assault but

10   later admitted under oath that nothing like sexual

11   assault ever occurred, that would be basically almost a

12   direct quote of the allegation.

13          MR. WYATT:  Your Honor, well, it's not a

14   pleading.  It's a preliminary injunction motion.

15   It's --

16          THE COURT:  That's a pleading, but it's not --

17   you're saying it's not a complaint or an answer, but

18   motions like that are pleadings.  Yeah.

19          MR. WYATT:  But it doesn't make clear that

20   it's drawing on that.  It says according to court

21   records, as if that was a fact established in the

22   litigation.  It -- I think a fair and accurate statement

23   here would have said, but according to Mr. Cahill's

24   preliminary injunction motion, she -- insert his

25   characterization that he used, which the Court later

1  denied.

2          THE COURT:  But doesn't the article make clear

3  right up front that this is being based on allegations

4  in a lawsuit that she was disputing?

5          MR. WYATT:  I'm not sure it makes that at all

6  clear about this statement, your Honor, that this

7  statement was --

8          THE COURT:  Attorney Kashani of Los Angeles

9  represents both Karpinski and Edalat.  He says they will

10  prove at trial, which is slated to begin July 25th, that

11  there is no merit to the lawsuit and that Karpinski, who

12  he described as a junior employee, was unfairly dragged

13  into it.

14          I agree it doesn't go point by point and

15  provide their -- her response to each allegation, but

16  there's a general statement in there that alerts the

17  reader that we have two people that are -- two sides

18  that are at war, they're using litigation for their

19  battle, and one side is making these allegations about

20  the other and the other is denying them and a trial will

21  settle the matter.  That appears to be what the article

22  is saying.

23          MR. WYATT:  Well, your Honor, not -- I would

24  not agree, not with respect to this statement.  It's

25  definitively saying she recanted her allegations.

```
 1                THE COURT:  According to court records.
 2                MR. WYATT:  According to court records.
 3                THE COURT:  Yeah.  That's not saying -- okay.
 4   I guess you say the word court records means rulings of
 5   the court, not filings in the case.
 6                MR. WYATT:  It does not alert readers that
 7   this is an allegation and it does not specify what it's
 8   reporting on.  As I understand --
 9                THE COURT:  So if they said according to
10   allegations in court records, you'd be fine with it?
11                MR. WYATT:  According to allegations in the
12   motion for preliminary injunction, which was later
13   denied, I view the fair report privilege has to be on
14   official action of the court and the official action was
15   that that motion was denied.
16                THE COURT:  Okay.  I don't -- I don't
17   understand the privilege at all to be limited in the way
18   that you suggest.  So you're saying it only is court
19   orders that can be -- you can only report on court
20   orders?
21                MR. WYATT:  Things taken up in an official
22   proceeding, in official actions of the court.
23                THE COURT:  We're going to get to the last of
24   your arguments in a second, but let -- anything else you
25   want to say about whether this statement was not a fair
```

1    and accurate report?

2              MR. WYATT:  Your Honor, in the context of the

3    article, other statements are qualified with the word

4    alleged and this one was not.

5              THE COURT:  Okay.  All right.  Anything else

6    you want to say on this subject?

7              MR. WYATT:  No, your Honor.

8              THE COURT:  No?  Anything else the defendants

9    want to say on this subject?

10             MR. SULLIVAN:  Yes, your Honor --

11             THE COURT:  Go ahead.

12             MR. SULLIVAN:  -- very briefly.

13             One of the reasons we believe my clients are

14   entitled to this case being dismissed is because if the

15   plaintiff wants to allege that "according to court

16   records" isn't sufficient, I know the Court has read the

17   deposition transcript, the relevant pages on this

18   particular issue, and I would suggest that if that

19   statement were attributed to the Union Leader solely

20   didn't say "according to court records," I would say

21   that would be an opinion of the defendants', that she

22   admitted her claims were -- that claim was baseless.

23             THE COURT:  Yeah, I'm -- the underlying

24   deposition, what it does is it asks her about the

25   elements of the offense of sexual assault and gets her

1    to acknowledge that certain of those elements were not

2    present in the case.  That -- that's what I take the

3    deposition to do.  But I'm not sure --

4              MR. SULLIVAN:  Understood.  And that

5    deposition was provided to Patricia Grossmith prior to

6    writing this article.

7              THE COURT:  Yeah.

8              MR. SULLIVAN:  So if -- if it didn't say

9    according to court records and it just made that

10   statement, I'd say that's a statement of opinion --

11             THE COURT:  Yeah.

12             MR. SULLIVAN:  -- thus entitled to dismissal.

13             THE COURT:  Statements of opinion to the

14   extent they apply knowledge of facts that aren't

15   available to the reader can be defamatory, even if

16   they're statements of opinion.

17             MR. SULLIVAN:  Sure.

18             THE COURT:  But that's -- I don't -- I'm not

19   focused on that issue.  I understand you to make the

20   argument, but I think this is a fair report privilege

21   case.  That's what this issue is --

22             MR. SULLIVAN:  I agree, your Honor.

23             THE COURT:  -- what this case is about.

24             Okay.  Let's then turn to your last point

25   which you want to make an argument about, official

1  proceeding, right, that somehow this was not an

2  official -- that this had not matured to the point that

3  there had been judicial action and without judicial

4  action, there can't -- there's no entitlement to the

5  privilege.  Is that the argument that you're making?

6          MR. WYATT:  Yes, your Honor, based on comment

7  (e), Restatement 611, Restatement (Second) of Torts.

8          THE COURT:  Yes.  I'm well aware of comment

9  (e).  Can you tell me, has the New Hampshire Supreme

10 Court ever adopted comment (e)?

11         MR. WYATT:  It has not specifically addressed

12 it, your Honor.  The closest it has come is in the

13 *Thomas* case.  It adopts a related doctrine and

14 essentially held that you can't claim fair report

15 privilege simply because there's a record in the police

16 department.  It has to be an official action of the

17 police department that's being reported upon.  And --

18         THE COURT:  Okay.  That's not how I read

19 *Thomas*.  We went over -- but isn't that the same quote

20 you just -- we talked about earlier that you're relying

21 on?

22         MR. WYATT:  In that same section.

23         THE COURT:  Yeah.  I just don't rely -- read

24 *Thomas* in that way.  It doesn't require -- it doesn't

25 require that what is being reported on is an action of

1    the government official.  That's never how the fair

2    report privilege -- the fair report privilege has never

3    been so limited and certainly (e) does not limit the

4    fair report privilege in that way.

5            What the privilege -- what the Restatement

6    states is:  A report of a judicial proceeding implies

7    that some official action has been taken by the officer

8    or body whose proceedings are thus reported.  The

9    publication, therefore, of the contents of preliminary

10   proceedings such as a complaint or petition before any

11   judicial action has taken -- been taken is not within

12   the rule stated in this section.  Therefore, report of

13   preliminary pleadings such as complaint or petition

14   after any judicial action has been taken is within the

15   rule.

16           Do you see what I -- you seem to be misreading

17   this section to apply the rule to a limited -- very

18   limited class of things, only what the judge says, not

19   what anybody else says, in the underlying case.  And if

20   the drafters of the Restatement had intended the rule to

21   work that way, they would have stated it and courts

22   would have applied it that way, but they never do.

23   They're certainly not -- the New Hampshire Supreme Court

24   has never adopted this -- this rule and in *Thomas*

25   doesn't apply it in the way you're suggesting.

1          What I was looking at is has there been

2    judicial action in the case.  Because what -- as I

3    understand the purpose of the exception, it's designed

4    to prevent somebody from being freed from the effects of

5    a defamation action by filing a phony complaint.  Like I

6    could file a phony complaint saying horrible things

7    about you and before anything could happen, I could call

8    the reporter and say, you ought to see the complaint

9    that I just filed; you might be interested in it.  And

10   then the reporter could report on the defamatory things

11   and claim fair report privilege and I could accomplish

12   the -- a defamation without subjecting myself to

13   liability.

14          Where there's judicial action, for example,

15   if counsel for the Union Leader were to make

16   outrageously defamatory things about you in a pleading

17   and you can't -- you could move to strike them, those

18   allegations, from the record.  And people do file

19   motions to strike allegations in a complaint that are

20   extraneous and scurrilous kind of allegations.

21          But this case was very far advanced.  It was

22   getting close to trial at the time this article

23   appeared.  I mean, if you look at the docket sheet in

24   the case, at the time the article was published, there

25   had been more than 200 docket entries in the case.

1   There had been many orders issued on the case.  There'd

2   been an order issued on the second amended complaint by

3   that time.

4           So there -- there had been ample judicial

5   action in the case.  I don't see how, even if the

6   exception applies, how it could possibly apply here.

7   What's your response?

8           MR. WYATT:  I guess I understand -- my

9   understanding, your Honor, is official action was more

10  in terms of some official proceeding, something along

11  the lines of maybe the preliminary injunction

12  proceeding, maybe trial, when witnesses are giving

13  testimony on the subjects that are alluded to in the

14  complaints.

15          THE COURT:  Well, it says generally some

16  official action has been taken by the officer or body

17  whose proceedings are thus reported.

18          With respect to a judicial proceeding, it --

19  it doesn't require that there be a trial.  It says

20  below:  It is not necessary, however, that final

21  disposition be made of the matter in question.  It is

22  enough that some judicial action has been taken so that

23  in the normal progress of the proceedings, a final

24  decision will be rendered.

25          That's sort of to prevent like summary

1    dismissal.  So one way in which if you file a *pro se*

2    complaint in this court and ask for relief from filing

3    fees, before anybody has to respond to it, the Court

4    will review it and if it's frivolous will just throw it

5    out.  So it's designed to deal with those kinds of

6    pleadings.  It doesn't require a trial.  And there have

7    been many, many pleadings filed in this case prior to

8    the publication of this article and many judicial

9    actions taken on those pleadings.  So I -- I really

10   don't see how that -- that applies.

11           Anything else you'd like to add on that?

12           MR. WYATT:  No, your Honor.

13           THE COURT:  All right.  What would you like to

14   say about the official proceeding?

15           I also should note that there -- the modern

16   trend is not to enforce this exception at all.  It's

17   unclear to me whether New Hampshire would enforce it.

18   If I were to allow the case to go to trial, we might end

19   up having to certify this question to the New Hampshire

20   Supreme Court because both -- I know Illinois and

21   New Jersey have flatly rejected the exception and said

22   it does not apply in fair report cases.

23           So -- but the -- I think the larger problem we

24   have is that there had been ample judicial action on

25   this matter prior to the publication of the article and

1    ample judicial action following all of the statements

2    that were the basis for the reporting in the article.

3              So what else did you want to add?

4              MR. SULLIVAN:  I don't want to -- I completely

5    agree with the Court's assessment.  I have already cited

6    the November 29, 2016, order which counsel a moment ago

7    I think said if -- I'd agree if it was in the context of

8    a preliminary injunction, which is what we have here.

9    And if counsel were writing the article, he'd say and

10   the preliminary injunction was denied, and then, of

11   course, we'd have to add because Cahill was seeking

12   prior restraint of free speech and that's why the

13   injunction was denied.  But we don't have to discuss

14   every aspect of every motion, nor could we ever in this

15   particular case.

16             I conclude, your Honor, by saying what we have

17   here is a fair and accurate report on a matter of public

18   interest where -- and I did want to say, going back to

19   the issues of malice and we haven't got to conspiracy

20   and consumer protection -- I allege that they all fall

21   because the fair report privilege applies.

22             THE COURT:  Okay.  So let's -- let's deal with

23   that question or part of that question first.

24             Do you both agree that if the fair report

25   privilege applies here to the defamation claim, it also

1    applies in the same way to the false light claim?

2              You think that.

3              Do you agree or not?

4              MR. WYATT:  Your Honor, I -- and I did cite --

5    there's a section in the Restatement that says those

6    doctrines apply to false light the same as they do to

7    defamation.

8              THE COURT:  Okay.  So I think -- and I don't

9    see any reason why in this case -- there might be some

10   cases where some versions of false light might not be

11   subject to the same fair report privilege, but I don't

12   see any basis in this case for recognizing some special

13   exception.

14             So to the extent that fair report bars the

15   defamation claim, it also bars the false light claim.

16   The conspiracy is based on conspiracy to commit

17   defamation and false light towards.  If the defamation

18   and false light claims fail, the conspiracy claim fails

19   for the same reason.  That seems a matter of just basic

20   logic.  If somebody disagrees with that, tell me.

21             We can -- we can talk about the conspiracy

22   claim -- I assume it'd be the Consumer Protection Act

23   claim -- in a moment, but I want to first ask you, do --

24   anything any of you want to say on the defamation and

25   false light claims, now is the time to say it.

1    I've read your pleadings.  I understand your

2    other arguments.  I see this primarily as a fair report

3    case and whether the fair report privilege applies.

4    You've raised an argument that -- that I didn't

5    understand in reading the pleadings, so I'm going to

6    think carefully about that.

7    You've also made an argument on malice, where

8    I'll have to look at the sufficiency of the pleadings on

9    that.  And of the four statements that comprise your

10   claim, it seems to me you have almost no argument with

11   respect to the first three.  With respect to the fourth,

12   there are some things about it that are not completely

13   accurate.  Whether those things can support a claim

14   notwithstanding the fair report privilege I'm going to

15   take under advisement and think about.

16   But anything else you want to say about your

17   defamation or false light claims?  I'll hear you first

18   and then you.  Okay?

19   MR. WYATT:  Your Honor, I know you've read

20   everything submitted.  I just want to spotlight one

21   thing and that is the surreply, the finding of -- or the

22   wording of the California court discussing the issue of

23   what we've called today the fourth statement, the one

24   that she recanted.

25   And this was in the context of the court

1    considering Denterlein's Anti-SLAPP motion and denying

2    that motion and observing --

3              I'm going to interrupt you right there.  That

4    is provably true or false, meaning that she testified

5    under oath that her allegations were baseless.

6              This is what attorney for the Union Leader

7    characterized an opinion.

8              That is provably true or false, and in this

9    case the evidence is that that statement is false.  I

10   know Karpinski, dash, I'm reading this declaration here.

11   It was my opinion based on my reading of Karpinski's

12   deposition that she admitted that under oath.  I don't

13   know how any human with limited knowledge of the English

14   language could make that statement.

15             THE COURT:  What statement?

16             MR. WYATT:  The statement that she had

17   admitted under oath that her allegations were baseless.

18             THE COURT:  What allegation?

19             MR. WYATT:  Well, they didn't get into

20   whether --

21             THE COURT:  Is it sexual assault or sexual

22   harassment?  I don't know what was before the judge in

23   that case, but the deposition excerpt that I've been

24   provided arguably supports a conclusion that she was

25   acknowledging that certain elements that are required

1   for proof of sexual assault were not present in the case

2   that she cited as the basis for her sexual assault

3   complaint.

4           As to sexual harassment, she did not expressly

5   deny that the elements of sexual harassment were proved

6   in her case.  In fact, she continued to maintain

7   throughout that she had been sexually harassed and she

8   recovered a small verdict that was for all -- a general

9   verdict for all of her claims which could,

10   theoretically, be for sexual harassment, might not be,

11   because there were other claims.  The jury was never

12   asked to specify what the basis for the claim was, but I

13   don't see her as ever withdrawing her sexual harassment

14   claim.  But I did see in her deposition that she

15   appeared in responding to certain questions to deny that

16   there was certain conduct that was necessary to satisfy

17   one or more of the elements of sexual assault.

18           MR. WYATT:  As I'm reading this transcript,

19   your Honor, in the preceding paragraph they're talking

20   about sexual harassment.

21           THE COURT:  That -- what the judge was talking

22   about?

23           MR. WYATT:  Presumably, given the argument

24   presented to him.

25           THE COURT:  Yeah, and that makes -- I agree.

1   To the extent somebody was saying sexual harassment, she

2   admitted under oath was false, the pleadings didn't

3   allege that, and the -- her deposition doesn't expressly

4   address on the point that I've read whether the sexual

5   harassment claim is viable or not and, in fact, she

6   continued to maintain the viability of the sexual

7   harassment claim notwithstanding her deposition.

8           But the challenge for you is this.  What you

9   really want them to report is she made a -- that the --

10  correctly report what's in the article, which is what's

11  in the article is she complained to the police that she

12  had been sexually assaulted and later admitted under

13  oath that that charge was baseless.

14          Which is more defamatory of a person, that

15  they made a false claim of sexual harassment or a false

16  claim of sexual assault?  It's quite obvious exposing

17  somebody to criminal penalties for sexual assault based

18  on a baseless allegation, if anything, is more damaging

19  than making the -- a baseless allegation about sexual

20  harassment.

21          So it's hard for me to see how that mistake in

22  any way was problematic for your client.  If anything,

23  it was a mistake that made her seem better than what the

24  pleadings actually reported.

25          So, in any event, did you want to say anything

1  else about this particular subject?

2  MR. WYATT:  No, your Honor.

3  THE COURT:  Okay.  Did you want to say

4  anything else?

5  MR. SULLIVAN:  One last thing on the false

6  light invasion of privacy, your Honor.

7  I agree that the fair report privilege would

8  take it out, but the last point I'd make on it is back

9  up to the word privacy.

10  This is not an invasion of Ms. Karpinski's

11  privacy.  She's posting to 14,000 readers on her

12  Instagram site and others and hiring a PR firm.  She's

13  generating publicity regarding these affairs.  So it's

14  not a -- it's not an invasion of privacy by any stretch

15  of the imagination.

16  That's it, your Honor.

17  THE COURT:  Okay.  I wanted to go over the

18  Consumer Protection Act count.

19  Let me ask my reporter -- would you like to

20  take a short break and we'll finish with that or would

21  you like to go another 15 minutes?  You think you can do

22  that?  Okay.

23  So you have a claim for what you call

24  respondeat superior.  That's just a -- a way of saying

25  that it's not a distinct cause of action; it's just

1    saying that they are -- the Union Leader is vicariously

2    liable for the torts of its employees.  That's -- isn't

3    that what you're saying with that claim?

4              MR. WYATT:  That's correct, your Honor.

5              THE COURT:  So it's not a distinct claim.

6              So we've got a -- we've got a defamation

7    claim, a false light claim, a conspiracy claim.  Do you

8    agree with me that if your first two claims fail, your

9    conspiracy claim also fails?

10             MR. WYATT:  Well, your Honor, there is a

11   section of the Restatement saying that you cannot have,

12   quote, elusive arrangement where one person says

13   something in a pleading for the purposes of allowing it

14   to be republished with impunity to the rest of the

15   world.

16             I would say that notwithstanding our

17   discussion here today, it still could be the case.  As

18   we've alleged, I think that Cahill certainly had that in

19   his -- that was his intent in alleging these and the

20   notion that the Union Leader went along with it could,

21   in and of itself, defeat the fair report privilege.

22             THE COURT:  So your argument is even if the

23   claims fail as to the Union Leader, the under -- first

24   two claims fail, if somebody else committed -- but the

25   defamation and false light act that you're citing is the

1    publication in the Union Leader, right?  That's the --

2              MR. WYATT:  That's right.

3              THE COURT:  Okay.  And if that publication is

4    not actionable defamation or false light -- false light

5    tort and that they conspired to do that which is not

6    actionable is not going to give rise to a claim.  There

7    might be unusual circumstances, where like I can

8    conspire with you to make a -- for you to make a

9    defamatory statement.  I haven't made a defamatory

10   statement, so I'm not liable for defamation.  If someone

11   sues me for your defamatory statement, for defamation, I

12   can have the claim dismissed, but I can still be liable

13   for conspiring with you for your defamatory statement.

14   But that's not what your conspiracy claim is about in

15   this case.  So I just don't see how it can survive if

16   the first two don't survive.

17             Let's deal, finally, with the Consumer

18   Protection Act claim, which is the only other claim.

19   And I have a little bit of trouble understanding the

20   defendants' argument on Consumer Protection, so will you

21   explain it to me?  Why do you think the Consumer

22   Protection Act claim must be dismissed?

23             MR. SULLIVAN:  Well, the statute itself

24   protects publishers, broadcasters, printers, and other

25   persons engaged in the dissemination of information --

1    who publish, broadcast, or reproduce material without

2    knowledge of the deceptive character are exempt from the

3    provisions.

4         THE COURT:  Well, I understand that.

5    Exemptions are usually the burden of proof is on you to

6    prove the exemption.  And at a 12(b)(6) stage, I have

7    trouble seeing how I can grant dismissal based on an

8    affirmative defense where you bear the burden of proof

9    with respect to whether you knew or didn't know of the

10   falsity of the underlying statement.

11        MR. SULLIVAN:  Well, before you get there, I

12   think you have to look at the allegations in the

13   complaint.  And, again, conclusory allegations will not

14   survive a motion to dismiss.  I think we have that with

15   respect to the conspiracy.

16        THE COURT:  But you're saying, though, the

17   complaint -- the Consumer Protection Act claim should be

18   dismissed because the exemption for publication that is

19   not knowingly false applies, right?  In order for that

20   exemption to apply, that -- it has to -- you have to

21   have not acted with knowing falsity.

22        MR. SULLIVAN:  There's no allegation in the

23   complaint that Union Leader knew these allegations to be

24   false prior to publication.

25        THE COURT:  Right.  But when you sue someone

1   in a complaint and the defense is the claim is barred by

2   the statute of limitations, it's not the plaintiffs'

3   obligation to plead that the claim is not barred by the

4   statute of limitations.  It's an affirmative defense.

5          There are some times you can grant a 12(b)

6   motion with respect to an affirmative defense.  For

7   example -- for example, in this case, the fair report

8   privilege is an affirmative defense.  But, here, the --

9   the element that bears on the exemption is whether your

10  actions were knowingly false and whether -- now, I'm not

11  sure that they have to plead that the exemption doesn't

12  apply because the exemption is an affirmative defense.

13  So they just have to plead the consumer protection

14  violation, you have to plead the affirmative defense,

15  and the only way you can win on summary judgment -- on

16  12(b)(6) is if it's undisputed that the facts that

17  support your affirmative defense are true.

18          MR. SULLIVAN:  I believe, your Honor, that in

19  looking at the complaint, it's not enough to survive a

20  motion to dismiss if there are only conclusory

21  allegations without any factual allegations supporting

22  the conclusion.

23          THE COURT:  Yeah, but you're just talking past

24  me.  I -- what I've said to you is you are relying on an

25  exemption.  Are you relying on an exemption to the --

1    are you relying on an exemption to the Consumer

2    Protection Act?

3            MR. SULLIVAN:  I don't think we have to, no.

4    I don't think they've alleged --

5            THE COURT:  So the thing you just cited to me

6    doesn't bear on the reason why the Consumer Protection

7    Act claim should be dismissed.  You started out your

8    argument by citing an exemption to the Consumer

9    Protection Act.  If you're not relying on that, that's

10   fine.  Are you telling me you're not relying on that

11   exemption?

12           MR. SULLIVAN:  Well, as much as we relied on

13   the affirmative defense of the fair report privilege, we

14   would rely on that affirmative defense.  But in -- but

15   in doing so, saying --

16           THE COURT:  Okay.  Let's use your -- let's use

17   fair report as an example.

18           The plaintiffs' complaint does not have to

19   allege that there was a defamatory statement and the

20   statement was not subject to the fair report privilege.

21   They don't have to allege that.

22           MR. SULLIVAN:  No, but they have to allege

23   there was a defamatory statement.

24           THE COURT:  Right.  And they have alleged that

25   there was a false statement that gives support -- the

1   same four false -- same four statements that they say

2   are false are -- are cited by them to support their

3   Consumer Protection Act claim.

4           MR. SULLIVAN:  That's not what the Consumer

5   Protection Act was enacted to protect consumers from.

6   That's why -- not relying on it as affirmative defense,

7   but that's why publishers have that commonsense defense.

8           THE COURT:  Okay.  So are you -- are you

9   saying that your 12(b)(6) argument with respect to the

10  Consumer Protection Act is they have failed to

11  sufficiently allege that any of the four statements are

12  unfair and deceptive statements that can support a claim

13  under the Consumer Protection Act?

14          MR. SULLIVAN:  Yes, your Honor.

15          THE COURT:  Okay.  That's a different argument

16  from the one I understood you to be making in your

17  memorandum, so now that I understand that, I will look

18  at it.

19          So saying -- but is saying that they are -- I

20  guess you would say whether something is unfair and

21  deceptive, if it is fair reporting because it's fair and

22  accurate, the same evidence -- the same documents that

23  lead to the conclusion that those statements are fair

24  and accurate supports a conclusion that they were not

25  unfair and deceptive.  And so on these --

```
 1                MR. SULLIVAN:  Yes.

 2                THE COURT:  -- this complaint and the

 3     attachments to it do not, in your view, allege unfair or

 4     deceptive statements because the very documents that

 5     they -- they reference and include in their complaint

 6     demonstrate that those statements do -- do not unfairly

 7     and deceptively report what's in the complaint -- in the

 8     pleading.

 9                MR. SULLIVAN:  That's correct, your Honor.

10                THE COURT:  Okay.  I -- I understand that now.

11                All right.  What do you want to say in

12     response to that?

13                MR. WYATT:  Your Honor, I would say -- first,

14     I acknowledge there are cases in Massachusetts I'm aware

15     of at least that say where your CPA claim is a

16     derivative of a defamation claim and the defamation

17     claim fails, so, too, does the CPA claim in a sense.

18     I'm not aware of anyone applying defamation privileges

19     to a CPA claim and what we have briefed, in essence, is

20     that we think the CPA provides defenses such as the

21     exemption and does not provide for a fair reporting

22     privilege.  And the fair reporting privilege there --

23                THE COURT:  But the statement does have to be

24     unfair and deceptive, right, to be a Consumer Protection

25     Act violation?
```

1          MR. WYATT:   (Nods head.)

2          THE COURT:  So if the statement is a fair and

3     accurate report of what's in an official filing, how can

4     it be unfair and deceptive?

5          MR. WYATT:  Well, your Honor, I guess that's

6     where we diverge because we believe, and particularly

7     with the statement about her recanting her testimony,

8     that it was not fair and accurate and, therefore, it was

9     unfair and/or deceptive.

10          THE COURT:  Yeah.  I think if it's -- while

11     I -- while I understand your -- your point that the

12     New Hampshire Legislature has not necessarily imported

13     all of the privileges that exist to defamation into

14     their Consumer Protection Act, I get that point, that

15     argument, a statement that is fair and accurate, a fair

16     and accurate description of what's in a pleading, it's

17     hard to see how that statement, which is a fair and

18     accurate report of what's in a pleading, can be unfair

19     and deceptive to support a Consumer Protection Act

20     claim.  And it -- unfair and deceptive might mean

21     something different, but I'm not sure it means something

22     sufficiently different to support a claim where the

23     underlying core claim of defamation fails because the

24     reporting is fair and accurate.

25          So, for example, if they had just quoted

1   the -- the allegations in the complaint -- in the

2   complaint here and said, in a second amended complaint

3   filed on this date, they said that, even if what those

4   things are said in the complaint are, in fact, untrue,

5   I'm not sure that that reporting would support a

6   Consumer Protection Act claim because it is accurately

7   reporting what's in the lawsuit allegation.

8           But I'll take that under advisement.

9           Is there -- is there anything else either you

10  want to say on the Consumer Protection Act claim?

11          MR. WYATT:  Just one thing is I believe the

12  exemption we were talking about, the knowledge, in

13  essence, of the media defendant in the CPA, I believe

14  sheds light on the question of maybe the dividing line

15  between what's unfair or deceptive and what's exempt.

16  And I would say their safe harbor is that they need to

17  prove that they did not have knowledge of it.  So if

18  they were reporting in an unfair or deceptive way, that

19  is their defense.

20          THE COURT:  Yeah.  That's an affirmative

21  defense and as I was originally thinking, as I was

22  originally understanding the defendants' argument, I was

23  wondering how I could reach any conclusions at the

24  12(b)(6) stage about whether the defendant knew about it

25  or not.  And since it's an affirmative defense, you

1     don't have to plead that the exemption doesn't apply

2     like you -- you do with respect to malice.  You would

3     have to plead malice -- if there's a fair report

4     privilege and you're saying it doesn't apply because of

5     malice, the burden would be on you to prove malice for

6     the defamation claim.

7               So I think I could reach a conclusion about

8     whether the complaint sufficiently pleads malice.  I was

9     less -- it was less clear to me that I could reach a

10    conclusion about whether you've sufficiently pled that

11    the Union Leader did not know of or knew of the falsity

12    of the claim.

13              But as I now understand the defendants'

14    arguments, a slightly different argument is that you --

15    the four statements you allege were not unfair and

16    deceptive and you haven't sufficiently pleaded that they

17    are unfair and deceptive regardless of whether the

18    exemption applies and you do have to plead unfair and

19    deceptive acts or statements, I think, to support a

20    Consumer Protection Act claim.

21              Okay.  Anything else anyone wants to say on

22    any subject?

23              MR. WYATT:  For what it's worth, I don't

24    think -- that argument hasn't been briefed by the

25    defendants.  As I am looking at page 13 of their

1    memorandum of law, it simply says because it's not

2    defamation, it's not Consumer Protection Act.  It does

3    not say it is not unfair and deceptive because the fair

4    report privilege applies.  But --

5             THE COURT:  Do you want to -- I'm not going to

6    deny -- like I won't deny you the ability to interject

7    what I think is a fourth argument as to why the fair

8    report privilege doesn't apply, I'm not going to deny

9    them an opportunity to argue that the statements are not

10   unfair and deceptive.  Do you feel some need to file a

11   further reply brief on that issue?

12            MR. WYATT:  No, your Honor, just I would say

13   for the record we don't agree with that new argument.

14            THE COURT:  Okay.  That's -- that's fair.  I

15   understand.

16            All right.  Anything else?  Did you want to

17   add anything else?

18            MR. SULLIVAN:  I want to thank the Court for

19   the obvious effort that you put into this case in

20   advance of this hearing.

21            THE COURT:  Hey, we take this -- I take this

22   stuff very seriously.  Defamation claims are significant

23   claims that require careful analysis and we're going to

24   continue to work on them.  So I want to be clear that

25   there are several issues that I'm going to continue to

1  examine.

2          When I take a position in an oral argument,

3  sometimes I'm trying to just see if I can falsify the

4  very position that I'm advocating, so you shouldn't

5  necessarily draw any conclusions about this argument.

6          I -- I want to very carefully look at this

7  fourth argument that you have raised based on *Bufalino*

8  that I had not previously considered.  I'm going to look

9  carefully at the malice argument that I -- that has been

10 presented here and whether you have sufficiently

11 identified pleadings that would support an allegation of

12 malice.  I'm going to look at the fourth statement and

13 whether that is fair and accurate and I'm going to look

14 at the Consumer Protection Act count.  I'm going to look

15 at all of those things and it's going to take me some

16 time.  We're going to write -- we'll write a decision

17 that will analyze it, but -- so don't draw any

18 conclusions about what I'm likely to do here.

19          MR. SULLIVAN:  May it please the Court, I

20 apologize.  I did want to follow up on the *Bufalino* --

21          THE COURT:  Okay.

22          MR. SULLIVAN:  -- issue.

23          THE COURT:  Yeah.

24          MR. SULLIVAN:  If the Court looks at the

25 information provided by Denterlein, the quotes in the

1    article are quotes from the pleadings.  So if they

2    weren't provided by Denterlein, obviously --

3            THE COURT:  It's amazing to me how close they

4    reflect things in the actual pleadings.

5            MR. SULLIVAN:  I want to suggest that in

6    addition to Patricia Grossmith, there were other

7    reporters and correspondents involved in this case.

8    There's an editor who's no longer there.  Grossmith is

9    no longer there.  But I do know that at the Union Leader

10   newsroom, they access PACER on a daily basis --

11           THE COURT:  Yeah, I --

12           MR. SULLIVAN:  -- so it's --

13           THE COURT:  -- probably couldn't consider that

14   at the 12(b) stage, but --

15           MR. SULLIVAN:  I think it's a reasonable

16   inference I'd ask the Court to draw, that obviously they

17   had to have somehow obtained the pleadings in order to

18   quote them.

19           THE COURT:  Well, I think the -- to this

20   extent, I think I agree with you that I can consider the

21   pleadings themselves at the 12(b) stage.  The case law

22   does allow me to consider that.

23           To the extent that a statement in the pleading

24   very closely corresponds to a statement in the article,

25   it is hard to then think that the reporter reported

1    without either directly or indirectly relying on the

2    pleading, especially where the article states that it's

3    according to the pleadings.

4              MR. SULLIVAN:  And uses quotation marks.

5              THE COURT:  And so I -- I think the -- I'm not

6    inclined to accept what I think is the plaintiffs'

7    primary argument, which is unless they look at the

8    pleadings themselves, they can't claim fair report.  And

9    I don't think any of the cases they've cited go that far

10   and I think it would be quite problematic to create a

11   new exception to the privilege that the New Hampshire

12   Supreme Court has not recognized along those lines.  And

13   I don't think *Bufalino* even would support that broad an

14   extension of this new exception to the fair report

15   privilege.

16              So I think close correspondence between a

17   statement in the pleading and a statement in the report

18   is something that needs to be considered and can be

19   considered at the 12(b)(6) stage.  Whether you looked at

20   PACER and -- that would come up at summary judgment.  If

21   you did that, I would assume somebody was assigned to go

22   online and look at the filings and maybe can testify to

23   that.  But I can't consider that at this stage of the

24   proceeding.  Okay?  Anything else?

25              All right.  Thank you.  I mean, it's a very

1    interesting issue.  We obviously take it seriously on

2    both sides.  And I'll -- I'll be issuing a written

3    decision on this.  It may take us a month or so, but

4    we'll try to get it out as soon as we can.  All right?

5    Thank you.

6              MR. JOHNSON:  Thank you, your Honor.

7              MR. SULLIVAN:  Thank you, your Honor.

8              (Proceedings concluded at 4:22 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


       I, Liza W. Dubois, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.


Submitted: 10/3/19

*Liza W. Dubois*

Liza Dubois, RMR, CRR
Licensed Court Reporter No. 104
State of New Hampshire